577 So.2d 1160 (1991)
Verlene HARRIS, Plaintiff-Appellant,
v.
GENERAL MOTORS, TRUCK AND COACH DIVISION, Defendant-Appellee.
No. 22219-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1991.
*1161 Hunter, Scott, Blue, Johnson & Ross, by James E. Ross, Jr., Shreveport, for plaintiff-appellant.
Lunn, Irion, Johnson, Salley & Carlisle by Frank M. Walker, Jr., Shreveport, for defendant-appellee.
Before MARVIN, C.J., and NORRIS and STEWART, JJ.
MARVIN, Chief Judge.
In this worker's compensation action, the claimant, Verlene Harris, appeals a judgment rejecting her demands. She complains of the trial court's finding that she failed in her burden of showing the occurrence of a work-related injury.
We affirm.

FACTS
Claimant alleged she was injured in December 1984 by using a welding gun at the General Motors plant in Shreveport. The welding gun she used was suspended from the ceiling and is operated by pulling and pushing it across the windshield frame of vehicles on an assembly line. GM formally transferred Harris to this position December 3, 1984. She began using the gun a day or so later.
Although Harris testified that she did not have chest pains or problems with her left arm, left hand, or beneath her left breast before she worked with the welding gun, her personnel records at GM show that Harris missed work on December 3, 1984, because of chest pains. She was examined by Dr. Walter Asseff on that day (December 3) for complaints of chest pains and of pain in her breasts. No history was recorded that explained how the pain came about. Dr. Asseff noted her complaints and did not note any objective findings.
Harris testified that she began working with the welding gun between two to four weeks before the Christmas holidays. She said she began to experience numbness in her fingers after working with the gun for about a week. She attributed the numbness to her new position. She said that during the Christmas holidays she began to feel pain in her left arm and under her left breast while hanging wallpaper at home.
Harris was also equivocal about when she reported her alleged injury to GM. She first testified that she went to GM's medical facility after the Christmas holidays, but later testified that she went there before the Christmas holidays. GM's medical facility records show her only visits were on December 14, 1984, with complaints of aching and a cough, and on December 19, 1984, with complaints of stomach problems.
Harris stated that after the Christmas holidays she told a co-worker about the problems the welding gun was causing her. Harris did not call the co-worker as a witness. Cynthia Rambo, Harris's supervisor in December 1984 and January 1985, had *1162 no recollection of Harris complaining to her of chest pains or arm pains when working, but did recall Harris being on sick leave several times.
Harris was examined by Dr. N.R. Spencer January 7, 1985, for complaints of pain in her chest, left arm and beneath her left breast, and loss of control and numbness in her left arm. He admitted her to St. Francis Hospital for diagnostic studies. After consulting with Dr. Mortimer Raphael, orthopedist, Dr. Spencer initially diagnosed Harris as having cervical strain. This diagnosis was based on her subjective complaints. He did not note any objective findings. Dr. Spencer concluded Harris's condition was caused by her use of the welding gun because she told him her pain commenced shortly after she started using the gun.
GM's medical records note Harris's alleged injury and her visit to Dr. Spencer on January 7, 1985.
On February 20, 1985, Harris was examined by Dr. Benedict Osetinsky, GM's plant physician. He did not find any objective symptoms of injury.
Dr. Spencer readmitted Harris on February 28, 1985, for more tests because of her continued complaints. He consulted with Dr. Jose A. Bermudez, neurosurgeon, regarding Harris's condition. Dr. Bermudez' test results were within normal limits.
Harris continued to see Dr. Spencer from time to time during 1985. Dr. Spencer's final diagnosis was cervical strain, while noting the possibility that she may have thoracic outlet syndrome, also known as scalene syndrome.
In August and September 1985, Harris was examined on three occasions by Dr. Marion Milstead, orthopedist. Dr. Milstead concluded Harris had a very mild thoracic outlet syndrome and temporarily restricted Harris from using power tools. These determinations were made based on the history given by Harris that she had been injured by the use of the welding gun and on her subjective complaints of pain. He agreed there were no objective findings of injury.
Harris was examined by Dr. James Zum Brunnen, orthopedist, in September 1985. Dr. Zum Brunnen diagnosed her as suffering from cervical strain and possible carpal tunnel syndrome, but explained this was based on subjective symptoms and the history provided him by Harris.
Harris was also seen by Dr. W.W. Fox in October 1985 and by Dr. J. Dean Stockstill from January 1988 to September 1988. These examinations did not produce objective findings of injury notwithstanding her subjective complaints of pain and numbness.

BURDEN OF PROOF
The claimant in a worker's compensation action has the burden of showing by a preponderance of the evidence the occurrence of a disability caused by a work-related accident. The claimant's burden of proof is not relaxed even though the Worker's Compensation Act is to be liberally construed in favor of a claimant. Nelson v. Roadway Express, Inc., 573 So.2d 591 (La.App. 2d Cir.1991).
This burden may be met by a claimant's testimony alone if that testimony is corroborated by surrounding circumstances. Adams v. Travelers Ins. Co., 345 So.2d 987 (La.App. 2d Cir.1977). If a claimant's testimony contains discrepancies and inconsistencies, that testimony alone does not meet the burden. Jones v. Alexander, 399 So.2d 216 (La.App. 2d Cir.1981), writ denied.
An appellate court does not set aside the trial court's factual conclusion in the absence of manifest error. Reasonable evaluations of credibility and inferences of fact by the trial court are given deference and are not disturbed on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Harris contends she showed the occurrence of a disability caused by a workrelated accident by a preponderance of the evidence. She argues that her testimony was corroborated by her supervisor's testimony and by medical opinions concluding her injury was caused by her use of the welding gun. We do not agree.
*1163 Harris's testimony was not corroborated by surrounding circumstances. Harris's supervisor did not testify that Harris complained of pain from using the welding gun. In fact, her supervisor's only recollection was that she was aware that Harris had been on sick leave on several occasions. The co-worker that Harris said she told of her problems from using the welding gun did not testify and was not called.
Harris's testimony was vague, equivocal and inconsistent as to when she reported or complained about pain from using the gun.
Harris said that she experienced tingling in her left arm one week after being transferred to the welding gun position on December 3, 1984. Harris visited GM's medical facility on December 14, 1984, with complaints of aching and a cough, and on December 19, 1984, with complaints of stomach problems. She did not relate these complaints to using the welding gun.
Significantly, Harris said that she had never had chest pains or problems with her left hand, left arm, or beneath her left breast before she began working with the welding gun on or after December 4. She did not explain her visit to Dr. Asseff on December 3, 1984, when he noted that she complained of chest pain and pain in her breasts.
The record also does not support Harris's argument that her testimony is corroborated by medical testimony. Every medical opinion that concludes her injury, however diagnosed, was caused by use of the welding gun is based on history given the doctors by Harris that she first began to feel pain in her left arm, left hand, and beneath her left breast after she started using the welding gun. Her complaints to Dr. Asseff belie the history she later gave other doctors.
The cause of Harris's injury must depend on the veracity of the history Harris gave the doctors and the trial court. We find the trial court's credibility assessment of Harris's testimony is supported by the record. The medical testimony does not support a finding, or corroborate Harris's testimony, that her injury was caused by a work-related accident occurring on or after December 4, 1984. Nelson v. Roadway Express, Inc., 573 So.2d 591 (La.App. 2d Cir.1991).

DECREE
We find no clear or manifest error in the trial court's determination that Harris failed in her burden of proof.
At appellant's cost, the judgment is
AFFIRMED.