614 So.2d 828 (1993)
Annie B. SHELTON, Plaintiff-Appellee,
v.
E.B. WALL d/b/a Bayou Inn Restaurant, Defendant-Appellant.
No. 24429-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
*829 Bodenheimer, Jones, Klotz & Simmons by Claude W. Bookter, Jr., Shreveport, for defendant-appellant.
Donald R. Miller, Shreveport, for plaintiff-appellee.
Before LINDSAY, HIGHTOWER and STEWART, JJ.
STEWART, Judge.
Defendant, E.B. Wall d/b/a Bayou Inn Restaurant, appeals from the decision of the workmen's compensation hearing officer finding that plaintiff, Annie B. Shelton, had suffered a work-related injury entitling her to temporary total disability compensation benefits for a period of twelve weeks together with penalties. Finding that plaintiff failed to meet her burden of proof so as to entitle her to benefits, we reverse.

FACTS
In June 1979, Shelton began her employment at Bayou Inn Restaurant. Shelton was promoted to the position of cook approximately six months later and worked *830 essentially full time, although her weekly hours varied, at a salary of $6.00 per hour.
On June 9, 1990 at approximately 7:00 p.m., Shelton was performing her duties as a cook during a busy evening shift at the restaurant and, while lifting a basket of fish, she experienced a pain in her left side. Shelton continued to work the remainder of her shift that night without reporting an injury to any of her co-employees or her employer.
On June 11, 1990, Shelton telephoned the restaurant and reported that she would not be in to work because she was in pain and was going to see a doctor. Shelton again failed to report that she had sustained a work-related injury. On that same date, Shelton sought medical care in the emergency room at LSU Medical Center, where she waited until approximately 11:00 p.m. and then left without seeing a physician. On June 12, 1990 Shelton went to her family physician, Dr. Carl Hines, who diagnosed Shelton's condition as acute costochondritis[1] and prescribed a mild pain medication. Shelton's chief complaints were chest pain, left arm pain and pain in her knees as well as a tender left ribcage. Dr. Hines' medical records indicate that Shelton did not report to him that she had experienced a work-related injury. Dr. Hines wrote a note which excused Shelton from work on the date of her visit to his office. Shelton did not seek any further treatment from Dr. Hines after that date.
On June 14, 1990, Shelton returned to work. Jim Wall, manager of Bayou Inn, assigned another employee to assist her with lifting and other employment duties when she felt that she needed help. Shelton worked her entire shift and did not require any assistance. Although she reported that she remained in severe pain which required pain medication at the end of the evening.
On June 22, 1990 Shelton sought further medical treatment at LSU Medical Center with the same complaint of severe pain in her chest. Shelton was given a note from the medical center excusing her from work on that date as she was seeking medical treatment. Shelton was seen at the medical center on four more occasions from June 27, 1990 through August 27, 1990 with her condition allegedly unchanged.
On October 18, 1990 Shelton filed the instant claim for workers' compensation benefits against her employer, E.B. Wall d/b/a Bayou Inn Restaurant. In her claim, Shelton alleged that she was injured by lifting a basket of fried fish and had reported the accident to her employer. Shelton stated that although she had returned to work one night following the accident, she had not been able to work since the date of injury.
At the hearing, Dr. Arthur Fort, a physician with LSU Medical Center, testified that on Shelton's first physical examination on June 22, 1990 she complained primarily of chest pain and knee pain. The preliminary diagnosis was skeletomuscular pain. At Shelton's next examination on June 27, 1990 her chief complaints were dizziness and chest pain which also was diagnosed as musculoskeletal strain. During Shelton's next examination on July 10, 1990 her chest pain appeared to be primarily centered on the left side which was the first indication of a diagnosis of costochondritis. On July 25, 1990 Shelton reported that she had improved but that some pain was still present in the left ribcage area.
Shelton was next seen on August 27, 1990 and made her first report that her condition was job-related. Shelton was then diagnosed with chest wall pain. The date of Shelton's next visit was January 18, 1991 with complaints about her left breast. At that time, Shelton made no complaints as to the costochondritis. Shelton returned on January 22, 1991 due to elevated blood pressure on her previous examination and was asymptomatic as to the costochondritis.
Shelton testified that she reported her condition to Jim Wall, the manager, approximately a week following the accident, and *831 that she had been to the hospital. She stated that Wall had asked when she would return to work and she told him she did not know as it depended on how she was feeling. She also testified that she told Jim Wall that her physician had stated that her condition was job-related.
During her absence from work, Shelton called the restaurant approximately every other day to inform them how she was feeling. She testified that she could not have returned to work after her alleged injury due to her work routine as a cook which required her to lift fish baskets. By August 27, 1990 Shelton stated that she still had some pain although it had decreased. By January 1991, she had substantially improved. However, Shelton testified that she never returned to her employment as she believed her employer would not allow her to do so after filing a claim for benefits.
Shelton testified that, although employees were instructed to report any on-the-job injuries, she did not report it immediately as she attributed it to gas pains and thought it would simply go away. She believed that, approximately two weeks after the accident, she had reported to her employer that her condition was job-related. She admitted that she did not report an on-the-job injury to Dr. Hines. She stated that she was told by a doctor during her examination at the medical center on July 10, 1990 that her condition was serious and she would not be able to work. Shelton believed she could have returned to work in August 1990 as she felt better, but did not contact the restaurant to resume her previous duties.
Hilda Oliver, a co-employee, testified that she was a cook at the restaurant with Shelton and did not consider the work to be difficult. Ms. Oliver was assigned by Wall to assist Shelton with her employment duties when she returned after her absence. However, Shelton did not require any help and performed her duties as usual. Shelton indicated that she was not "feeling well" but did not make any other complaints. Ms. Oliver described Shelton as a good, hard worker.
Jim Wall, manager of the restaurant and son of E.B. Wall, testified that Shelton had been an excellent employee. Wall testified that all employees were instructed to immediately report any on-the-job accidents to management. Wall further stated that he had never received any report of an injury by Shelton even though he had spoken with her on several occasions following her alleged injury. After seeking treatment by Dr. Hines, Shelton reported that she might have a cracked rib. So, when Shelton returned to work, Wall instructed all employees that she should not do any lifting and should be provided assistance. Wall observed Shelton and it appeared that she had no difficulties in performing her duties. However, Shelton never returned to work after that date, and Wall's attempts to contact her were unsuccessful. Neither Jim Wall nor his father, E.B. Wall, ever received any type of medical reports indicating that Shelton was unable to work or needed restricted duties, nor did Shelton contact them to arrange for her return to work.
E.B. Wall, owner of the restaurant, testified that Shelton had never indicated what had caused her illness and he was not aware she was claiming a work-related injury until he received a letter from her attorney. Wall described the fish baskets handled by the cooks as weighing less than ten pounds and stated that the other food customarily prepared came in bags weighing five pounds or less.
After examining the testimony and evidence, the hearing officer found that Shelton's injuries were job-related and these injuries prevented her from performing her job duties from the date of the accident, June 9, 1990, through August 1990. The hearing officer awarded Shelton temporary total disability benefits for the twelve week period following her injury together with penalties and medical expenses. This appeal ensued.

LAW
It is a well-settled legal principle that the factual findings in workers' compensation cases are entitled to great *832 weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact's factual determinations shall not be disturbed in the absence of a showing of manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Manson v. City of Shreveport, 577 So.2d 1167 (La.App. 2d Cir.1991), writ denied, 580 So.2d 928 (La. 1991); Harris v. General Motors, 577 So.2d 1160 (La.App. 2d Cir.1991); Brown v. Manville Forest Products Corporation, 565 So.2d 496 (La.App. 2d Cir.1990), writ denied, 567 So.2d 1127 (La.1990). Therefore, the appellate standard of review applicable to workers' compensation hearing officer's findings and judgments is the manifest error-clearly wrong test. Key v. Insurance Company of North America, 605 So.2d 675 (La.App. 2d Cir.1992).

DISCUSSION
Wall's first assignment of error on appeal is that the hearing officer erred in finding that Shelton's injury was job-related. Wall argues that Shelton did not report any work-related injury to either him or her treating physicians, nor did she complain of any injury to her co-workers. Wall argues that the evidence points to the conclusion that the incident occurred somewhere other than work as, had the event occurred on the job, Shelton certainly had sufficient opportunity to report the accident.
Wall asserts that after examining the totality of the evidence with only Shelton's testimony alleging an on-the-job injury, this court should find that she did not carry her burden of proof so as to entitle her to compensation benefits.
Despite the liberal construction of the statute afforded to the worker in a compensation action, Shelton's burden of proof is not relaxed. Plaintiff has the burden of proving a claim even though the Louisiana Workers' Compensation Act, LSA-R.S. 23:1021 et seq., is to be construed liberally in favor of the claimant. Plaintiff in a workers' compensation action, as in other civil actions, has the burden of establishing a work-related accident by a preponderance of the evidence. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992); Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991).
Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. In order for the employee to recover it must be determined that his employment somehow caused or contributed to his disability, but it is not necessary that the exact cause be found. Lubom v. L.J. Earnest Inc., 579 So.2d 1174 (La.App.2d Cir. 1991); Patterson v. GNB Battery, Inc., 569 So.2d 640 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1134 (La.1991).
In determining whether the worker has discharged the burden of proof, the trier of fact should accept as true a witness' uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. An accident at work may be proven by a claimant's uncontradicted testimony corroborated by the medical evidence. Thus, a worker's testimony alone may be sufficient to discharge this burden of proof provided that two essential elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. The trier of fact's determinations as to whether the worker's testimony is credible and whether the worker discharged the burden of proof are factual determinations not to be disturbed upon review unless clearly wrong. Bruno v. Harbert International Inc., supra; Nelson v. Roadway Express, Inc., supra; Harris v. General Motors, supra; Loyd v. IMC Fertilizer, Inc., 557 So.2d 1078 (La. App. 2d Cir.1990), writ denied, 561 So.2d 102 (La.1990); Gonzales v. Babco Farm, *833 Inc., 535 So.2d 822 (La.App. 2d Cir.1988), writ denied, 536 So.2d 1200 (La.1988).
If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the claimant fails to carry the burden of proof. Lubom v. L.J. Earnest Inc., supra; Patterson v. GNB Battery, Inc., supra.
In light of the jurisprudence cited above and our examination of the record, we find that Shelton failed to establish a work-related accident by a preponderance of the evidence. Shelton testified that she had experienced an episode of pain located in her left ribcage when she lifted a basket of fish as part of her employment duties, but her testimony is not corroborated by the evidence. Shelton completed her shift after the alleged injury without reporting the incident to any co-employees or to her employer. Shelton sought medical treatment two days after the alleged injury, however, she did not tell any of her treating physicians that she had experienced an on the job injury until more than two months later. While Shelton testified that she informed her employer approximately two weeks following the alleged accident that she had suffered an injury while performing her job duties, her employer denied ever receiving such a notification. Shelton returned to work for one evening shift after her alleged injury and again failed to report to either her employer or any co-employees that she had sustained a work-related injury. Although assigned an aide in the kitchen to assist her with her duties, Shelton was able to fully perform her job requirements and complete the shift without incident.
The medical evidence presented at the hearing does not support a conclusion that Shelton's condition was job-related. In fact, Dr. Fort testified that Shelton's complaints and objective findings were not consistent with the etiology of muscular strain and he had rarely found any relationship between some occupational or recreational activity and a diagnosis of costochondritis which occurs on the left side in virtually all cases.
Given the absence of corroboration and the contradictory evidence about her report of the alleged accident, we find the hearing officer's findings to the contrary to be plainly wrong.
Moreover, even if it were found that Shelton had suffered a work-related injury, we find that she failed to met her burden of proof that this injury had resulted in a temporary total disability.
LSA-R.S. 23:1221(1)(c) provides that compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
The sole medical testimony presented at trial was that of Dr. Fort who testified that according to Shelton's medical records compiled during her treatment at the medical center, Shelton's condition was not sufficient to restrict any of her work activities or to cause her to miss work for any significant period of time. Dr. Fort testified that hospital policy required that if a patient were found disabled or unable to work, this information would be documented in these medical reports. While Shelton testified that she was verbally informed by a treating physician that her condition was serious and she would be unable to work, the record is devoid of any such statement. The record indicates that Shelton only obtained written excuses from her physicians for missing two days of work in order to seek medical treatment. Thus, the record is devoid of any medical evidence to support Shelton's claim that the alleged injury was disabling.
Furthermore, it appears that Shelton was able to fully perform her employment *834 duties when she returned to work, requiring no assistance whatsoever. Shelton presented no evidence of her inability to perform any job duties. We find that the hearing officer was clearly wrong in finding a work-related injury and that such injury had resulted in a temporary total disability.

CONCLUSION
For these reasons, the judgment of the hearing officer awarding Shelton temporary total disability benefits from June 9, 1990 to August 31, 1990 together with penalties and medical expenses is reversed. Costs of this appeal are assessed against Shelton.
REVERSED AND VACATED.
NOTES
[1] The record shows that costochondritis is an irritation of a rib or its cartilage. Acute suggests rapid onset and of a short course, not chronic. (See Taber's Encylopedic Medical Dictionary, 15th Edition.)