676 So.2d 1157 (1996)
Rickey K. LeBLANC
v.
GRAND ISLE SHIPYARD, INC.
No. 95 CA 2452.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*1158 David J. Norman, III, Houma, for Plaintiff/2nd Appellant, Rickey K. LeBlanc.
Joseph A. Reilly, Jr., Houma, for Defendant/1st Appellant, Grand Isle Shipyard, Inc.
Before CARTER and PITCHER, JJ., and KLINE, J. Pro Tem.[1]
*1159 CARTER, Judge.
This is an appeal from a decision of a workers' compensation hearing officer.

BACKGROUND
On January 17, 1993, plaintiff, Rickey K. LeBlanc, was injured during the course and scope of his employment while working offshore for Lafitte Welding (Lafitte). While walking on a stack of pipe, plaintiff slipped and fell, sustaining injuries to his neck and back. Plaintiff initially consulted a Dr. Arillads of West Bank Medical Center and had x-rays taken.
On February 1, 1993, plaintiff consulted Dr. David M. Jarrott, a neurosurgeon, for cervical and lumbar spine evaluation. After examining plaintiff, Dr. Jarrott diagnosed cervical and lumbar neuralgia and determined that plaintiff was disabled and in need of active treatment.
On February 6, 1993, Dr. Jarrott saw plaintiff in the emergency room for complaints of neck pain and right arm pain with numbness, as well as back and bilateral leg pain. Dr. Jarrott diagnosed cervical and lumbar disc syndrome and admitted plaintiff into the hospital for observation. On February 10, 1993, plaintiff was discharged from the hospital with a diagnosis of C5-6, C6-7 disc syndrome and L5-S1 disc syndrome, and Dr. Jarrott determined that plaintiff was disabled and in need of active treatment.
On March 29, 1993, Dr. Jarrott performed a follow-up examination of plaintiff. Plaintiff had complaints of neck pain, headaches, right arm and right hand numbness, lower back pain, and nervousness. Dr. Jarrott diagnosed C4-5 and C6-7 prolapse with anterior defect at C3-4 and C6-7, as a result of the January 17, 1993, injury, as well as L5-S1 disc syndrome which was in remission. Plaintiff was determined to be disabled and in need of active treatment. Plaintiff was to return to see Dr. Jarrott for reevaluation in four weeks.
On April 28, 1993, Dr. Jarrott again examined plaintiff. Plaintiff had complaints of neck pain, headaches, right arm numbness radiating into the hand, lower back pain, and left leg pain. Dr. Jarrott diagnosed C5-6 and C6-7 disc prolapse and L5-S1 disc syndrome. Again, Dr. Jarrott found plaintiff to be disabled and in need of active treatment.
On June 24, 1993, plaintiff settled his workers' compensation claim against Lafitte for the sum of $12,000.00 and, thereafter, did not seek medical treatment for his injuries.

FACTS
On July 21, 1993, less than one month after settling his workers' compensation claim against Lafitte, plaintiff applied for employment with Grand Isle Shipyard, Inc. (Grand Isle). Dr. William Crenshaw performed a pre-employment physical examination of plaintiff. At Dr. Crenshaw's office, plaintiff answered a medical history questionnaire, on which he indicated that he had never been awarded benefits under a workers' compensation claim and had not been treated by a physician within the previous three years, except for minor injuries or illnesses. As part of plaintiff's examination, Dr. Crenshaw ordered an MRI of the lumbosacral spine, and the MRI produced normal results. Subsequently, plaintiff was hired by Grand Isle as a roustabout.
On August 24, 1993, plaintiff was injured during the course and scope of his employment with Grand Isle when a flame arrestor fell onto his head and neck.[2] At the time of the accident, plaintiff was working offshore on a seven/seven hitch. As a result of the accident, plaintiff was unable to complete the hitch and was sent ashore for medical attention, which he initially received from a Dr. Johnson at Our Lady of the Sea Clinic in Galliano.
On August 31, 1993, Grand Isle referred plaintiff to Dr. Neil Maki, an orthopedic surgeon, who diagnosed a soft tissue injury of the neck and began treating plaintiff with medication and traction.
*1160 On September 20, 1993, Dr. Maki released plaintiff for light duty employment. Plaintiff returned to Grand Isle, working light duty until October 5, 1993. Grand Isle and its workers' compensation insurer, Gray Insurance Company (Gray) paid plaintiff no weekly compensation benefits during this period, but paid plaintiff's medical expenses. Beginning October 5, 1993, plaintiff was incarcerated for forty-five days.[3] On December 1, 1993, plaintiff returned to Grand Isle, working regular duty. On February 1, 1994, plaintiff left Grand Isle's employ.
On August 23, 1994, plaintiff filed with the Office of Workers' Compensation a disputed claim for compensation (1008 Form) on the grounds that Grand Isle refused to pay him compensation benefits and that he suffered a continuing disability. Plaintiff alleged that his injuries resulted in lost time, which began in December, 1993. Grand Isle and Gray filed an answer, indicating that no compensation had been paid to plaintiff, that plaintiff was not disabled, and that plaintiff's alleged injuries were the result of injuries preexisting the August 24, 1993, accident or occurring subsequent thereto.
On July 21, 1995, the matter was tried before a workers' compensation hearing officer. The parties stipulated that plaintiff was injured during the course and scope of his employment on August 24, 1993, that plaintiff's average weekly wage was $444.60, and that plaintiff's compensation rate was $299.10. The parties also stipulated to the introduction of certain documentary evidence.
On August 31, 1995, the hearing officer rendered a decision, finding that (1) plaintiff was injured during the course and scope of his employment with Grand Isle on August 24, 1993; (2) plaintiff was entitled to temporary total disability benefits from August 24, 1993, through September 20, 1993; (3) plaintiff was entitled to supplemental earnings benefits from September 21, 1993, through December 1, 1993, to be computed based on the average weekly wage of $444.60; (4) plaintiff failed to establish any disability after December 1, 1993; (5) plaintiff was entitled to the payment of all medical bills, medication expenses, and transportation expenses from August 24, 1993, through December 1, 1993; (6) plaintiff failed to establish any connexity between the August 24, 1993, injury and any disability after December 1, 1993; (7) Grand Isle was to be credited for any benefits paid to or on behalf of plaintiff from August 24, 1993, through October 5, 1993; (8) plaintiff misrepresented certain facts after December 1, 1993, for the purpose of obtaining workers' compensation benefits; and (9) plaintiff must forfeit his right to any benefits after December 1, 1993.
Grand Isle and Gray appealed from the decision of the hearing officer, alleging the following specifications of error:
(1) The hearing officer erred in finding plaintiff credible/believable up until December 1, 1993, but not credible thereafter.
(2) The hearing officer properly held that plaintiff forfeited his rights to compensation benefits through misrepresentations under LSA-R.S. 23:1208, but the hearing officer erred when it applied the forfeiture selectively to only a portion of the benefits claimed. All benefits should be forfeited.
(3) The hearing officer erred by excluding evidence of plaintiff's felony conviction for impeachment purposes under Louisiana Code of Evidence, Article 609 A(1).
Plaintiff appealed from the decision of the hearing officer, alleging the following specifications of error:
(1) The hearing officer erred in finding that plaintiff failed to prove a disability after December 1, 1993.
(2) The hearing officer erred in finding that any misrepresentations made by plaintiff were effective before March 29, 1995, when plaintiff began working again at Casino Magic; and, therefore, the hearing officer should have awarded benefits up to and including that date.

DISABILITY
In order to recover workers' compensation benefits, a claimant must show that he received personal injury by accident arising out of and in the course and scope of his *1161 employment and that said injury necessitated medical treatment and/or rendered the employee disabled. Polk v. Babineaux's Plumbing, Inc., 628 So.2d 71, 74 (La.App. 3rd Cir.1993); Alfred v. Mid-South Machine, Inc., 594 So.2d 937, 939 (La.App. 3rd Cir. 1992).
Pursuant to LSA-R.S. 23:1221(1)(c), a claimant has the burden of proving a temporary total disability by clear and convincing evidence.[4]Penn v. Wal-Mart Stores, Inc., 93-1262 p. 3 (La.App. 3rd Cir. 6/15/94); 638 So.2d 1123, 1126, writ denied, 94-1835 (La. 10/28/94); 644 So.2d 651; Polk v. Babineaux's Plumbing, Inc., 628 So.2d at 74. In the absence of clear and convincing evidence that the employee is physically unable to engage in any employment, the claimant's demand for temporary total compensation benefits must fail. Tanner v. International Maintenance Corporation, 602 So.2d 1133, 1137 (La.App. 1st Cir.1992).
In claiming a permanent total disability, the plaintiff must prove by clear and convincing evidence his inability to engage in any gainful employment. LSA-R.S. 23:1221(2)(c); Rachal v. Crown Store Equipment Co., 93-1602 p. 2 (La.App. 3rd Cir. 6/1/94); 640 So.2d 730, 732; Schmitt v. City of New Orleans, 632 So.2d 367, 373-74 (La. App. 4th Cir.1993); Ross v. St. Paul Fire & Marine Insurance Company, 556 So.2d 891, 895 (La.App. 2nd Cir.1990); Henderson v. Jackson Iron and Metal Company, Inc., 535 So.2d 983, 984 (La.App. 2nd Cir.), writ denied, 536 So.2d 1202 (La.1988); Keith v. Louisiana State Office of Risk Management, 516 So.2d 440, 443 (La.App. 1st Cir.1987).
The issue of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. Pollock v. Louisiana Insurance Guaranty Association, 587 So.2d 823, 825 (La.App. 3rd Cir.1991). The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. Taylor v. Louisiana-Pacific Corporation, 602 So.2d 48, 51 (La.App. 3rd Cir.), writs denied, 606 So.2d 541 and 542 (La.1992). The hearing officer is afforded great latitude in making credibility determinations and in weighing testimony. Harris v. Bronco Construction Company, 93-2139 p. 4 (La.App. 1st Cir. 10/7/94); 644 So.2d 805, 807, writ denied, 94-2740 (La. 1/6/95); 648 So.2d 931. The determination of an expert's credibility is a factual question, subject to the manifest error/clearly wrong standard of review. Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1277 (La.1991); Harris v. Bronco Construction Company, 644 So.2d at 807; Cheramie v. Horst, 93-1168 (La.App. 1st Cir. 5/20/94); 637 So.2d 720, 723. Moreover, after weighing and evaluating all of the evidence, the fact finder is free to accept or reject the opinions expressed by the experts. Harris v. Bronco Construction Company, 644 So.2d at 807; Hoyt v. State Farm Mutual Automobile Insurance Company, 623 So.2d 651, 659 (La.App. 1st Cir.), writ denied, 629 So.2d 1179 (La.1993).
The question of whether the claimant is entitled to disability benefits is ultimately a question of fact, and the trial court's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Polk v. Babineaux's Plumbing, Inc., 628 So.2d at 74; Taylor v. Louisiana-Pacific Corporation, 602 So.2d at 51. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. *1162 Shelton v. Wall, 614 So.2d 828, 832 (La.App. 2nd Cir.1993). When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993); Shelton v. Wall, 614 So.2d at 832. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one in view of the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882; Harris v. Bronco Construction Company, 644 So.2d at 807.
In the instant case, in making the determinations relative to plaintiff's disability, the hearing officer considered the following testimony and documentary evidence:
On August 24, 1993, while working offshore, plaintiff was in the process of changing flame arrestors when one of the arrestors fell, striking plaintiff on the head and neck. Plaintiff immediately experienced dizziness, neck pain, and headache. After filling out an accident report, plaintiff was taken ashore to obtain medical care. Plaintiff was initially examined by a Dr. Johnson at Our Lady of the Sea Clinic in Galliano.
Grand Isle subsequently referred plaintiff to Dr. Neil Maki, an orthopedic surgeon. Dr. Maki testified, via deposition, that he first examined plaintiff on August 31, 1993. In reviewing plaintiff's August 24, 1993, x-rays, Dr. Maki found a soft tissue injury to the C-1, C-2 area and treated plaintiff with cervical traction. On August 31, 1993, Dr. Maki released plaintiff for light duty employment.
On September 1, 1993, a CT-scan was performed on plaintiff, revealing a minimal rotatory subluxation at C-1 and C-2. An MRI showed a centrally herniated disc at C-5. Dr. Maki noted that plaintiff's medical history indicated treatment by Dr. David M. Jarrott in January, 1993, for a small herniated disc at C-5. However, Dr. Maki found that Dr. Jarrott had not studied the C-1 level. Therefore, although the subluxation at C-1, C-2 could have been a preexisting injury, Dr. Maki assumed it to be a new injury.
From September 13 through September 16, 1993, plaintiff was hospitalized for skeletal traction. On September 20, 1993, Dr. Maki released plaintiff for light duty employment, but restricted plaintiff from working overhead or climbing unprotected heights. On September 28, 1993, Dr. Maki found that plaintiff had some persistent mild subluxation at C1, C2. Plaintiff continued to use cervical traction at home, but the pain persisted. On December 1, 1993, Dr. Maki examined plaintiff, finding no significant changes, and he released plaintiff to return to regular duty employment.
Mark Prejean, manager of Grand Isle's Galliano office, testified that he was not present on August 24, 1993, when plaintiff was injured. According to Prejean, plaintiff was examined by Dr. Maki on August 31, 1993, and plaintiff subsequently returned to light duty employment at Grand Isle.
Relying on Grand Isle's payroll records, Prejean stated that plaintiff did not work full forty hour weeks during the time he was released for light duty employment. While plaintiff was on light duty status, Prejean saw plaintiff working at a lounge at approximately 1:00 in the afternoon, carrying plywood and sanding overhead cabinets. Prejean testified that Grand Isle guarantees forty hours of light duty work per week and that, during the weeks in which plaintiff worked less than forty hours at Grand Isle, plaintiff "definitely" could have worked forty hours.
Prejean testified that plaintiff returned to regular duty employment at Grand Isle sometime during the week ending December 7, 1993. According to Prejean, plaintiff continued working at Grand Isle until February 1, 1994, at which time plaintiff informed Prejean that he was leaving Grand Isle's employ because he had received a better job offer. Thereafter, plaintiff did not return to work at Grand Isle.
Fred Wolfe, claims adjuster for Gray, testified that he was assigned to handle plaintiff's workers' compensation claim. According to Wolfe, Gray made medical payments on plaintiff's behalf, but did not make any *1163 weekly compensation payments because plaintiff had available light duty work and, in fact, performed light duty work. Wolfe indicated that, in early December, 1993, Dr. Maki released plaintiff for full duty employment.
Plaintiff testified that, when Dr. Maki released him for light duty employment, he returned to work at Grand Isle, helping around the office, making copies, and running errands. According to plaintiff, during his light duty status, he performed no work other than that at Grand Isle, noting that, when he was not working at Grand Isle, he was at home "in bed."
Plaintiff indicated that, on October 5, 1993, he was incarcerated for forty-five days for failure to pay child support. Plaintiff testified that, upon his release from incarceration, he returned to work at Grand Isle, but was informed that there was no light duty work available. Grand Isle then sent plaintiff to work offshore on a one-day, regular duty job. When Grand Isle called plaintiff to do this type of work again, plaintiff indicated that he was incapable of performing offshore, regular duty work because swinging from the boat to the rig, which is a normal part of offshore work, caused him to experience pain in his neck and shoulders. According to plaintiff, from that point on, he never again spoke with anyone from Grand Isle and did not return to work at Grand Isle. Plaintiff stated that he never told anyone at Grand Isle that he was quitting because he had another job. In fact, plaintiff testified that, after leaving Grand Isle, he was not employed. However, on cross-examination, when plaintiff was shown Grand Isle's payroll records, which revealed that he continued to work at Grand Isle from the week ending December 7, 1993, through February 1, 1994, plaintiff acknowledged that he continued working at Grand Isle through February 1, 1994.
Considering the above testimony and documentary evidence, the hearing officer made the following determinations with regard to plaintiff's proof of disability: (1) plaintiff proved his entitlement to disability benefits (TTD or SEB) from August 24, 1993, through December 1, 1993; (2) plaintiff failed to prove a disability after December 1, 1993; and (3) plaintiff failed to establish any connexity between the August 24, 1993, accident and any disability after December 1, 1993. We will examine the various time frames in which plaintiff was allegedly disabled to determine whether the hearing officer was manifestly erroneous in making these findings.

A. August 24, 1993-December 1, 1993

Grand Isle and Gray did not appeal the hearing officer's determination that plaintiff proved his entitlement to temporary total disability benefits from August 24, 1993, through September 20, 1993, and his entitlement to supplemental earnings benefits from September 21, 1993, through December 1, 1993.[5] Therefore, that issue is not before us on appeal. However, we note that, on appeal, Grand Isle and Gray contend that, because plaintiff made misrepresentations and false statements for the purpose of obtaining workers' compensation benefits, the hearing officer should have found that plaintiff forfeited his right to all workers' compensation benefits, not only those after December 1, 1993. This issue will be addressed later in the opinion.
B. December 1, 1993-February 1, 1994
The hearing officer determined that plaintiff failed to prove a disability after December 1, 1993. Based on the testimony and documentary evidence, it is clear that Dr. Maki released plaintiff for regular duty on December 1, 1993. Plaintiff then returned to regular duty employment at Grand Isle until February 1, 1994, at which time plaintiff left Grand Isle's employ. Therefore, we find that there is a reasonable basis in the record for the hearing officer's finding that plaintiff did not prove by clear and convincing evidence that he was physically unable to engage in any employment after December 1, 1993. Accordingly, the hearing officer's finding that plaintiff failed to prove a disability *1164 after December 1, 1993, is not manifestly erroneous.

C. After February 1, 1994

The record reveals that, on March 9, 1994, approximately one month after leaving Grand Isle's employ, plaintiff consulted Dr. William H. Kinnard for complaints of neck pain radiating into the left trapezius and arm. After reviewing radiographic reports, Dr. Kinnard felt that plaintiff had a resolved rotatory subluxation, which was possibly causing some residual pain. Dr. Kinnard also noted that plaintiff had evidence of disc herniation which likely was causing a continuation of symptoms, and he recommended that plaintiff undergo further diagnostic testing. Dr. Kinnard did not receive authorization from Gray for the additional testing. In a letter, dated October 26, 1994, Dr. Kinnard indicated that plaintiff was unable to work and that he considered plaintiff to be temporarily totally disabled. Dr. Kinnard continued treating plaintiff conservatively through July, 1995.
The hearing officer found that plaintiff failed to prove a connexity between the August 24, 1993, accident and any disability identified by Dr. Kinnard after December 1, 1993. After thoroughly reviewing the entire record in this matter, we are convinced that there is a reasonable basis in the record for this finding, and, therefore, it cannot be manifestly erroneous.

FORFEITURE OF BENEFITS
The hearing officer found that, even if plaintiff had proved his entitlement to disability benefits after December 1, 1993, he forfeited his right to those benefits because of his false statements and misrepresentations.
Grand Isle contends that the hearing officer erred in applying LSA-R.S. 23:1208, the forfeiture statute, to only a portion of plaintiff's workers' compensation benefits and that all of plaintiff's benefits should have been forfeited. However, plaintiff contends that the hearing officer erred in forfeiting his benefits prior to March 29, 1995, when he began working at Casino Magic, and that he should have been awarded benefits until, and including, that date.
A workers' compensation claimant's false statements and representations, concerning benefit payments, is addressed in LSA-R.S. 23:1208. The date of the false statement determines the applicable version of the statute governing a claimant's misrepresentations made for the purpose of obtaining workers' compensation benefits. Resweber v. Haroil Construction Company, 94-2708 p. 3 n. 1 (La. 9/5/95); 660 So.2d 7, 10. At all times pertinent hereto, LSA-R.S. 23:1208 provided, in part, as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * * * * *
E. Any employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
The requirements for forfeiture of benefits under LSA-R.S. 23:1208 are that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Company, 660 So.2d at 12; Sumrall v. Luhr Brothers, 95-0779 (La. App. 1st Cir. 12/15/95); 665 So.2d 796, 799, writ denied, 96-0187 (La. 3/15/96), 669 So.2d 425. LSA-R.S. 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made willfully by a claimant for the purpose of obtaining benefits and thus is generally applicable once an accident has allegedly occurred and a claim is being made. Resweber v. Haroil Construction Company, 660 So.2d at 14.
The statutory language in LSA-R.S. 23:1208 does not limit the forfeiture of benefits to the time period after the claimant makes the false statements or misrepresentations. In Resweber v. Haroil Construction Company, 660 So.2d at 12, the Louisiana Supreme Court examined the legislative history *1165 of LSA-R.S. 23:1208 and noted, as follows:
The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent.... The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored.
In the instant case, the evidence reveals that, on August 31, 1993, Dr. Maki had his initial consultation with plaintiff. At Dr. Maki's office, plaintiff filled out a patient's registration form, on which he indicated that he had no previous neck injuries. Clearly, this was a false statement because plaintiff had been treated by Dr. Jarrott from January through June of 1993 for cervical problems.
On September 3, 1993, Dr. H. Carson McKowen examined plaintiff at Dr. Maki's request. In relating his medical history to Dr. McKowen, plaintiff stated that he previously had a cervical strain, but that it was not severe. The record clearly reveals that, after the January, 1993, accident, Dr. Jarrott diagnosed a C4-5, C6-7 prolapse with anterior defect at C3-4, C6-7 and found plaintiff to be disabled.
At trial, plaintiff denied being disabled from the January, 1993, injuries. However, he acknowledged that he was disabled to the extent that he received weekly workers' compensation benefits for five months after the accident and that he settled the workers' compensation claim for $12,000.00.
At trial, plaintiff testified that, after he was released from incarceration, he returned to work at Grand Isle. Plaintiff indicated that he worked only one day at Grand Isle because he could not perform the regular duty work required by the offshore job. However, on cross-examination, when plaintiff was shown Grand Isle payroll records, which revealed that he continued to work at Grand Isle from the week ending December 7, 1993, through February 1, 1994, plaintiff acknowledged that he continued working at Grand Isle through February 1, 1994.
Plaintiff testified that, after leaving Grand Isle's employ, he had not obtained subsequent employment. However, on cross-examination, plaintiff acknowledged that he had, in fact, been employed after leaving Grand Isle. Plaintiff admitted that, on or about March 28, 1995, he became employed as a cook at Casino Magic and continued to work there through the week prior to trial. Plaintiff recanted his earlier contrary testimony.
Based on the foregoing, we conclude that the hearing officer correctly determined that all of the requirements of LSA-R.S. 23:1208 were met: (1) plaintiff made false statements; (2) these statements were made willfully and deliberately; and (3) these statements were made for the purpose of obtaining workers' compensation benefits. However, because plaintiff willfully made false statements for the purpose of obtaining workers' compensation benefits, the hearing officer erred in awarding plaintiff any compensation benefits. We conclude that, because plaintiff made the false statements and misrepresentations, he forfeited any right to compensation benefits. As noted earlier in the opinion, Grand Isle and Gray did not appeal plaintiff's entitlement to temporary total disability benefits from August 24, 1993, through September 20, 1993, his entitlement to supplemental earnings benefits from September 21, 1993, through December 1, 1993, or plaintiff's entitlement to supplemental earnings benefits during his incarceration beginning October 5, 1993. However, because we find merit in Grand Isle's and Gray's contentions that plaintiff made false statements and misrepresentations, plaintiff is not entitled to any compensation benefits. Therefore, that part of the hearing officer's decision, awarding plaintiff temporary total disability benefits from August 24, 1993, *1166 through September 20, 1993, supplemental earnings benefits from September 21, 1993, through December 1, 1993, and medical and transportation expenses, is reversed. Although LSA-R.S. 23:1208 requires the forfeiture of any compensation or medical benefits when a claimant has made false misrepresentations in order to obtain benefits, this statutory provision does not contain an express grant of authority to order reimbursement of compensation or medical benefits already paid by an employer or an insurer to a claimant. Sumrall v. Luhr Brothers, 665 So.2d at 800.
In the instant case, plaintiff forfeits his right to all compensation and medical benefits. The record reveals that Grand Isle and Gray did not pay any weekly compensation benefits. However, there is evidence of record to show that Grand Isle and Gray paid certain medical expenses. Gray and Grand Isle are not entitled to reimbursement for any medical expenses previously paid to or on behalf of plaintiff. See Sumrall v. Luhr Brothers, supra.

EXCLUSION OF EVIDENCE
Grand Isle contends that the hearing officer erred in excluding evidence of plaintiff's prior felony conviction, which was offered for impeachment purposes.
Given our finding that plaintiff forfeited any right to workers' compensation benefits, we find it unnecessary to address this issue.

CONCLUSION
For the foregoing reasons, that part of the hearing officer's decision, awarding plaintiff temporary total disability benefits, supplemental earnings benefits, and medical and transportation expenses, is reversed. In all other respects, the hearing officer's decision is affirmed. Appeal costs are assessed against plaintiff.
REVERSED IN PART, AFFIRMED IN PART.
NOTES
[1] Judge William F. Kline, Jr., is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] Plaintiff described a flame arrestor as a vent-like object used to prevent fire from entering chemical storage areas. According to plaintiff, the flame arrestor was approximately three feet round, four to five inches thick, and weighed approximately 150 to 200 pounds.
[3] Plaintiff's incarceration resulted from failure to make court ordered child support payments.
[4] By Acts 1989, No. 454, § 6, LSA-R.S. 23:1221 was amended, effective January 1, 1990. These amendments set forth the more stringent standard of proof for a claimant seeking disability based on a temporary total disability.

Pursuant to LSA-R.S. 23:1221(1), as amended, the claimant must prove the nature and extent of his disability by "clear and convincing proof," unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. Tanner v. International Maintenance Corporation, 602 So.2d 1133, 1137 (La.App. 1st Cir.1992). See Menard v. Winn Dixie Louisiana, Inc., 93-1497 p. 9-10 (La.App. 3rd Cir. 6/19/94); 640 So.2d 775, 781, and Taylor v. Louisiana-Pacific Corporation, 602 So.2d 48, 51 n. 1 and 2 (La.App. 3rd Cir.), writs denied, 606 So.2d 541 and 542 (La.1992).
Prior to the 1989 amendment, the burden of proof in a claim for temporary total disability benefits was by a "preponderance of the evidence."
[5] We note that the hearing officer awarded plaintiff supplemental earnings benefits during the period of plaintiff's incarceration beginning October 5, 1993. However, Grand Isle and Gray did not appeal this award.