| .SOL GOTHARD, Judge.
In this workers’ compensation case, defendant/employer, Jefferson Parish School Board (School Board), appeals a judgment finding that claimant/employee, Estella Williams, suffered a compensable injury and was entitled to receive temporary total disability benefits from August 13, 1999 through November 15, 2001. The judgment further ordered defendant to pay “medical bills and medication expenses, related to and arising from the incident of August 13, 1999, in .accordance with law.” The School Board was found to be arbitrary and capricious in its refusal to pay benefits prior to December 13, 2000 and penalties and attorney’s fees were assessed.
The record shows that on April 18, 2000 Estella Williams, who is employed with the Jefferson Parish School Board as a custodian, filed a disputed claim for Workers’ Compensation in which she alleged that she was injured in August 1999 when she inhaled toxic paint fumes. The School Board filed an answer denying the claim. The matter went to a trial on the merits on November 15, 2001, after which the judgment at issue herein was rendered.
At the hearing on the claim, the parties entered into stipulations regarding claimant’s rate of pay, the rate of compensation, and the amount of time of unpaid compensation. After discussion between the parties and the court, certain | .documentary evidence was accepted and some documents were the subject of a defense objection. The court made preliminary rulings on these issues and the matter proceeded to hearing.
The court heard testimony from claimant, Estella Williams. She testified that she has been employed at West Jefferson High School as a custodian for twenty-two years. As such, her job duties included emptying trash, cleaning bathrooms, dusting, and mopping. She has a seventh grade education and is able to read and write. Ms. Williams testified that in August, 1999 she arrived for work as she normally did and began her duties. When she entered one of the classrooms, a teacher and two others were painting the room. Although the window was open, Ms. Williams stated that there was “no air” in the room. The smell of paint was so strong that Ms. Williams was unable to complete the cleaning of the room. She tried to clean nearby rooms, but the paint fumes were strong enough to permeate the air in those rooms also. Ms. Williams stated that she told Ms. Cartwright, the disciplinarian, that the fumes were making her sick. Ms. Cartwright advised Ms. Williams to inform the principal, Dr. Mow-en. However, when Ms. Williams went to Dr. Mowen’s office, she was in a meeting and was unavailable. Ms. Williams testified that she then went to find a co-worker who often carries peppermints. She ate three peppermints, but she continued to cough and be nauseated. She went out *537 side to catch her breath and get some fresh air. When she felt better she returned to work in a different section of the school. When she got home she began to feel worse and decided to go to West Jefferson Hospital emergency room later that night. However, after she stayed for several hours without seeing a doctor, she went to a nearby drug store and asked the pharmacist for advice. He recommended some cough syrup, which she purchased, and went home. She used the cough syrup and went to work the next day. Because her condition had not improved, she again went to the hospital for treatment. This time she was treated Rand admitted. Doctors informed Ms. Williams that she could not return to work, so she contacted her boss, Bo Rodriquez, and told him of her condition. At that time her treating physician was Dr. Rhonda Kroll. Dr. Kroll referred claimant to Dr. Elaine LaNasa. After Dr. LaNasa reviewed the results of tests taken, she told claimant not to return to work. When Ms. Williams realized she could not work, she requested a leave of absence without pay from the School Board because she did not know how long she would be unable to work.
Ms. Williams testified that prior to the incident with the paint fumes, she had gone to the emergency room at the hospital about three or four times because of shortness of breath and mucus buildup in her lungs. She testified that she now needs oxygen and an inhaler to breathe. She stated that she went to Meadowcrest Hospital in 1993 for treatment of pneumonia, but was able to return to her work as a custodian. She stated that she could not recall a hospital stay in 1998. She also testified that before the incident in question herein, she was breathing normally and was able to work, do household chores, and work in her garden. Now, the shortness of breath makes it impossible to do any of those things. She has been hospitalized since the incident and has incurred medical bills that remain unpaid by defendant.
On cross-examination, Ms. Williams denied a hospitalization in 1998, a chest X-ray in 1996, and complaints to Dr. Knoll regarding shortness of breath and excessive coughing. She admitted filing for and receiving social security benefits pursuant to an application in which she indicated she did not intend to file for workers’ compensation benefits.
Ms. Williams’ daughter, Terrine Williams, testified that before the inhalation of the paint fumes her mother could do a lot of things for herself such as cooking, household chores, and gardening. However,-since the incident those activities are severely restricted due to shortness of breath and difficulty breathing. | BMs. Terrine Williams testified that her mother was hospitalized on prior occasions for breathing related problems, but she always returned to normal after the treatments. She was able to continue working and doing normal home related activities.
Dr. Lisa Mowen, the principal at West Jefferson High School at the time of the incident in question, testified that the first time she became aware of Ms. Williams’ injury was on November 30, 1999. It was on that day that Ms. Williams brought in a document entitled “First Report of Injury” for a signature. Dr. Mowen stated that she knew Ms. Williams had requested a leave of absence for medical reasons, but she did not know the injury was work-related. Dr. Mowen stated that she does not recall if she contacted anyone in the workers’ compensation department about the claim.
Jane Patton of the Jefferson Parish School System testified that Ms. Williams came to her office on November 29, 1999 to report the injury. It appeared to Ms. *538 Patton that Ms. Williams had made a claim to the disability insurance carrier that was rejected on the basis that it was a workers’ compensation matter. Ms. Williams seemed to be confused and was seeking direction. Ms. Patton called Dr. Mowen’s secretary and found that she was unaware of the incident. Ms. Patton asked Ms. Williams if she had informed anyone at the school of the injury and she responded that she did not. Ms. Patton advised Ms. Williams that, because she had not advised her employer of the incident within the required thirty days, her claim would be denied. That prompted Ms. Williams to make the first injury report to Dr. Mowen the next day.
Because the report was made over thirty days after the injury, a denial letter was sent to Ms. Williams. Ms. Patton did not recall whether any investigation into the matter, other than the call to the school, was made. On January 5, 2000, Ms. Williams’ daughter called Ms. Patton and asked which health care facility would | fiprovide care for her mother. Ms. Patton informed Ms. Williams’ daughter that the claim was denied and a second denial notice was sent out. Two days later, Ms. Williams called to inquire how she could appeal the denial of her workers’ compensation claim. Ms. Patton explained the process and gave Ms. Williams the telephone number for the district office of the department of labor. On May 4, 2000, Ms. Patton received a notice from the department of labor that a mediation conference was set for July 14, 2000. At that time, Ms. Patton had no medical records, bills, or information regarding Ms. Williams’ injury. The first medical information was received in August 2000, pursuant to a subpoena issued after the mediation. There were bills and balances due, but no diagnosis. Some bills indicated a heart related illness and treatment which Ms. Patton could not relate to anything contained in Ms. Williams’ report of injury. An independent medical examination with Dr. William Emory was set up and, after receiving his report, Ms. Patton concluded this was not a compensable matter. Ms. Patton concluded that this was a disability that should be covered by their insurance carrier and not a workers’ compensation matter. She stated that she wrote the denial letter to speed up the process of Ms. Williams’ claim for disability.
Dr. William Emory, an expert in pulmonary care, testified for the defense. He stated that he examined Ms. Williams on November 29, 2000, and reviewed her medical records, including X-rays taken at Meadowcrest in 1993 and 1996. His conclusion was that Ms. Williams has pulmonary fibrosis. Dr. Emory explained that in 80% of the cases in which such a diagnosis is made, the cause is unknown. He stated that it “tends to be something that presents as an insidious process over several months or years.” It tends to result in a cough and shortness of breath. Dr. Emory also testified that the inhalation of paint fumes would not be the causation of the condition. In regard to the effect of the inhalation of paint fumes on a patient with the pulmonary condition suffered by Ms. Williams, Dr. Emory stated |7that it would cause bronchitis, a cough and mucus production, but not structural changes in the cells lining the lungs. He estimated that the illness resulting from the exposure to paint fumes would last only a few days.
The record also contains the deposition of Dr. Elaine LaNasa, a board certified pulmonologist, who treated Ms. Williams after she was hospitalized in September 1999. Dr. LaNasa was called in for a consultation by Ms. Williams’ treating physician, Dr. Rhonda Kroll. At that time, Ms. Williams reported that she had been ill since she inhaled paint fumes at work in *539 August 1999. She was treated for pneumonia, but did not respond well. She was admitted to the hospital on September 9, 1999. Dr. LaNasa examined the patient, reviewed chest x-rays taken upon admission, and ordered a biopsy of the right lung. Dr. LaNasa stated that Ms. Williams had damage to the air sacs of the lungs, and was given medication, breathing treatments, and oxygen. Dr. LaNasa treated Ms. Williams through the rest of 1999. Ms. Williams was' supposed to return in January for a visit, but she did not. Dr. LaNasa saw Ms. Williams again in March of 2000 when her condition had worsened and she was again hospitalized. At that time another chest x-ray was taken and that again showed the bilateral infiltrate. In July 2000, Dr. LaNasa ordered another chest x-ray and found that Ms. Williams’ condition had worsened. Further testimony shows that Dr. LaNasa’s ultimate diagnosis was diffuse alveolar damage from an undetermined cause. Dr. LaNasa reviewed the x-rays from 1993, 1996 and 1998. She found that Ms. Williams had infiltrates as far back as 1993. Dr. LaNasa testified that the x-rays showed abnormalities in the lungs, but she could not tell from a review of the x-rays if Ms. Williams had Granulomatis disease. Nor could she be certain that the x-rays showed a natural progression of an untreated lung disease. However, Dr. LaNa-sa opined that an exposure to chemicals would exacerbate the lung condition. She further stated that it is her belief that Ms. Williams began a “downhill spiral” when she inhaled the paint | Sfumes. Dr. LaNasa pointed out that Ms. Williams was able to continue working between 1993 and August 1999 despite the hospitalizations for her lung condition. However, since the inhalation of paint in August 1999, she has gotten worse and has been unable to work.
In the first two assignments briefed to this court, defendant argues that claimant forfeited her right to workers’ compensation benefits by making false statements regarding her prior medical history, and that her testimony is not credible. Defendant maintains that Ms. Williams’ false statements regarding her hospitalizations before the August 1999 incident in which she inhaled the paint fumes is sufficient to forfeit any benefits to which she may have otherwise been entitled. Defendant also argues the trial court’s finding that claimant was a credible witness is reversible error.
LSA-R.S. 23:1208 provides in pertinent part as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
The only requirements for forfeiture under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7, 12. In a worker’s compensation case, as in other cases, we are bound by the manifest error rule and may not set aside the factual findings of the hearing officer absent a finding that they are clearly wrong or manifestly erroneous. Rivera v. West Jefferson Medical Center, 96-152, 96-153 (La.App. 5 Cir. 7/30/96), 678 So.2d 602. Reasonable evaluations of credibility and reasonable inferences of fact by the trial *540 court will not be 19disturbed, even though our appellate review may lead us to another reasonable evaluation. LeBlanc v. Grand Isle Shipyard, Inc., 95-2452 (La.App. 1 Cir. 6/28/96), 676 So.2d 1157, 1161; Lee v. Alton Ochsner Medical Foundation, 01-650 (La.App. 5 Cir. 10/17/01), 798 So.2d 1225, 1229; writ denied, 01-3094 (La.2/1/02), 807 So.2d 853.
In the instant case, the court gave written reasons for judgment in which it found Ms. Williams to be a credible witness. We have reviewed the testimony and find that Ms. Williams did make false statements regarding her hospitalization in 1996 and 1998. However, her testimony of the incident of paint inhalation and the after effects are consistent with other evidence produced at trial. Further, although her testimony was inconsistent regarding her prior condition, she did testify to the fact that she had prior breathing problems. Overall, her testimony does not evince an attempt to give false statements for the purpose of obtaining workers’ compensation benefits. Given the record before us, we cannot find manifest error in the trial court’s finding that this claimant is entitled to benefits.
In the next two assignments, defendant argues the trial court was clearly erroneous in its finding that a compensable event occurred, or in the alternative, that a pre-existing condition was aggravated by the inhalation of paint fumes. As we noted in the above discussion, our review of the factual findings of the trial court are on a manifestly erroneous/clearly wrong standard. There is ample evidence to show that the claimant inhaled paint fumes in August 1999 while in the course and scope of her employment to warrant a finding that a compensable event occurred. Further, there is sufficient medical testimony to corroborate claimant’s testimony that her condition was aggravated by the inhalation of the fumes. Even defendant’s doctor admitted that such an incident would cause some injury, although he was not in agreement with the treating physician that the irritation would worsen the condition or last for a significant period of time. We find the 110record before us provides sufficient support for the trial court’s finding of facts and we cannot rule that the findings reach the level of manifest error or clearly erroneous. Accordingly, we find no merit in these arguments.
In the final assignment, the defendant asserts the trial court erred in that part of the judgment that provides for the payment of medical expenses and makes a punitive award for arbitrarily refusing to pay medical expenses. The judgment states, “the claimant, is entitled to the payment of only; the medical bills and medication expenses, related to and arising from the accident of August 13, 1999, in accordance with law.” Defendant objects to the lack of specificity in that ruling. We agree. The medicals introduced into evidence over defense objection are clearly more than is compensable for the injury suffered herein. Those medicals contain references to heart-related treatments and hospital visits. While the judgment correctly decrees that the medical payments compensable are limited to those which were incurred as a result of the August 1999 incident, it does not separate those expenses out from the medical documents entered into evidence. We hereby remand the matter to the trial court for that purpose.
Further, we find that the finding that defendant was arbitrary and capricious in the refusal to pay benefits is manifestly erroneous, given the facts of this case. Accordingly, we reverse that portion of the judgment that makes that finding and awards penalties and attorney’s fees.
*541 For the foregoing reasons, the judgment appealed is reversed insofar as it finds defendant arbitrary and capricious and awards a penalty of $2,000 and attorney’s fees in the amount of $2,000. In all other respects the judgment is affirmed and the matter is remanded to the lower court for a specific finding on the amount of medical expenses compensable.

REVERSED IN PART; AFFIRMED IN PART AND REMANDED.