728 So.2d 398 (1998)
GUARANTEE SYSTEMS CONSTRUCTION & RESTORATION, INC.
v.
Rebecca B. ANTHONY and Scottsdale Insurance Company.
No. 97 CA 1877.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
Writ Denied December 18, 1998.
*399 Connell L. Archey, Baton Rouge, Counsel for Plaintiff-Appellee Guarantee Systems Construction & Restoration, Inc.
Reginald J. McIntyre, Hammond, Counsel for Defendant-Appellant Rebecca B. Anthony and Scottsdale Insurance Company.
BEFORE: GONZALES, KUHN, and WEIMER, JJ.
WEIMER, J.
This case involves a suit by a construction company against a property owner and her fire insurance carrier for payment for services rendered and/or goods delivered on a renovation project. Following a bench trial, judgment was rendered in favor of the construction company. For reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On May 11, 1994, a commercial building owned by defendant, Rebecca B. Anthony, sustained fire damage. Ms. Anthony's building was insured for fire damage by Scottsdale Insurance Company (Scottsdale). An adjuster representing Scottsdale contacted plaintiff, Guarantee Systems Construction & Restoration, Inc. (Guarantee), to assist in preparing an estimate for the repair of the damaged building and to bid on the job. Based on this estimate, Guarantee agreed to perform the repairs. Ms. Anthony and Guarantee, through its representative, Paul Liuzzo, entered into a contract in which Ms. Anthony agreed to include Guarantee's name on all checks issued by her insurer as an additional payee and assigned all insurance proceeds to Guarantee. Ms. Anthony was ultimately dissatisfied with Guarantee's work and "locked them out" of the job. She then hired another contractor to finish the job.
Subsequently, Guarantee submitted a bill to Ms. Anthony for the work performed on the building. However, Guarantee was never paid for its services as Scottsdale paid the insurance proceeds directly to Ms. Anthony. On November 30, 1994, Guarantee filed this action for damages naming as defendants Ms. Anthony and Scottsdale. Thereafter, Ms. Anthony and Scottsdale filed a reconventional demand against Guarantee for the additional expenses allegedly incurred by her in finishing the repairs after she had "locked" Guarantee off the job. Following a bench trial, judgment was rendered in favor of Guarantee and against Ms. Anthony and Scottsdale in the amount of $9,976.00. Furthermore, the trial court awarded $900.00 to Ms. Anthony on her reconventional demand.
From this judgment, Ms. Anthony and Scottsdale appealed, and assigned specifications of error relative to:
1. sufficiency of proof;
2. qualification of an expert witness; and
3. (quoting the third assignment of error) "Did the Court err in holding Scottsdale liable, along with Anthony, without giving a reason, even in that [sic] the assignment of insurance proceeds *400 had been canceled and that there was no valid assignment in place?"
Guarantee answered the appeal assigning as error the trial court's refusal to award attorney's fees to Guarantee. Guarantee also complained that the appeal was taken solely for delay and that sanctions for frivolous appeal should be assessed against Ms. Anthony and Scottsdale. Furthermore, Guarantee filed a Motion to Strike Exhibits seeking to have exhibits attached to appellants' original appeal brief stricken as they were not included as part of the record on appeal.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, Ms. Anthony and Scottsdale complain that Guarantee failed to provide sufficient evidence to substantiate its claim to recover damages for the work performed. In a preliminary ruling following the trial of this matter, the trial judge found there was no evidence to show a "defect in workmanship" and Guarantee was entitled to recover. For the following reasons, we find this assignment of error to be without merit.
The Louisiana Supreme Court developed a two part test for reviewing factual issues on appeal in Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). According to the test, appellate courts may not disturb a trier of fact's factual findings unless:
1. The appellate court finds from the record that a reasonable factual basis for the finding of the trial court does not exist, and
2. The appellate court determines that the record establishes that the finding is clearly wrong (manifestly erroneous).
Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
The court has promulgated some general principles for appellate courts to follow when determining whether factual findings are "clearly wrong." One general principle concerns the credibility of witnesses. When factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Credibility determinations may be clearly wrong when "documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story." Rosell, 549 So.2d at 844-845; Stobart, 617 So.2d at 882. However, absent contradictory evidence or inconsistent or implausible statements, it is "virtually never" clearly wrong for the fact finder to accept one witness's version of the facts over another. Rosell, 549 So.2d at 845.
The trial court's factual findings in the present case are based on credibility determinations and must be afforded great deference. After reviewing the record in its entirety, we conclude that the trial court was not manifestly erroneous in finding that Guarantee was entitled to recover for the work they performed on Ms. Anthony's building.
Paul Liuzzo, a former employee of Guarantee, testified regarding the amount of work actually performed by Guarantee. According to Mr. Liuzzo, Guarantee agreed to perform the job for Ms. Anthony based on the estimate prepared by Scottsdale's adjuster, and it would only perform the work reflected on the estimate. The estimate prepared by the adjuster totaled $16,244.07. Mr. Liuzzo indicated that he was the supervisor for this particular job. He further testified that he was present on the site daily and would remain there for anywhere from three hours to all day.
Mr. Liuzzo stated that he received a letter from Ms. Anthony on June 3, 1994, regarding her complaints about the work that had been done by Guarantee. In this letter, Ms. Anthony advised Guarantee that it had five days to finish the job to her satisfaction. According to Mr. Liuzzo, approximately 85%90% of the repair work had been completed by the time he learned of Ms. Anthony's complaints. In support of this testimony, Guarantee provided a videotape to the court which *401 showed the condition of the premises on June 4, 1994.
On June 9, 1994, Guarantee was locked out of the job by Ms. Anthony. Mr. Liuzzo stated that it would have only taken approximately two more days to finish the job. Mr. Liuzzo prepared an invoice in the amount of $10,876.43 outlining the work that had been completed by Guarantee as of June 9, 1994, and submitted the invoice to Ms. Anthony. According to Mr. Liuzzo, the difference between the total on the invoice and the original estimate represented the cost of the items that were not completed by Guarantee, such as the replacement of the floors. When asked why the floors were not replaced as called for in the original estimate, Mr. Liuzzo stated it was because Ms. Anthony was trying to save money, and told them to just clean the floors rather than replace them if possible.
The cleaning supervisor for this job, Kathy Walker, also testified regarding the condition of the premises as of June 9, 1994. Ms. Walker indicated that during the last few days on the job (i.e. June 3June 8), she and her crew completed the final clean up of the premises. In fact, according to Ms. Walker, Ms. Anthony told them that they had done a great job. Ms. Walker also testified that she had seen the videotape prepared by Guarantee and that it accurately represented the condition of the premises.
According to Ms. Anthony, she became dissatisfied with Guarantee's work and typed a list of things that she wanted Guarantee to fix. On June 3, she met with Mr. Liuzzo and the adjuster from Scottsdale at the building to review her list of complaints, and she advised Mr. Liuzzo that he had five days to correct the problems. Ms. Anthony indicated that on June 9 when the problems had not been corrected to her satisfaction, she locked Guarantee out of the job. She testified that there was more damage to the building after Guarantee had finished with it than there was from the fire itself. At that point, she contacted another contractor, Mr. David Dillonkauffer, who prepared an estimate for the job totaling $18,960.00. Ms. Anthony advised that Mr. Dillonkauffer completed the job to her satisfaction in approximately three weeks.
We have thoroughly reviewed the entire record in this matter and find that a reasonable basis exists for the trial court's finding that Guarantee was entitled to recover for the work done on Ms. Anthony's building. The testimony was conflicting, and apparently, after hearing all of the evidence, the trial judge made credibility determinations which must be afforded "great deference." In accordance with the general principle previously cited, we conclude that the trial court's credibility determinations are not manifestly erroneous or clearly wrong. Therefore, the factual findings of the trial court are affirmed.

ASSIGNMENT OF ERROR NUMBER TWO
In assignment of error number two, Ms. Anthony and Scottsdale contend that the trial court erred by going beyond its discretionary right in accepting William Foulks as an expert witness in that he had a proprietary interest in Guarantee. They further complain that Mr. Foulks' testimony should be excluded because the probative value of his testimony was outweighed by unfair prejudice. Guarantee tendered Mr. Foulks as an expert in the field of fire reconstruction. Over the objection of counsel for Ms. Anthony and Scottsdale, the trial court accepted Mr. Foulks as an expert in this field.
Louisiana Code of Evidence article 702 provides for the qualification of expert witnesses whose testimony will assist the trier of fact to understand the evidence or to determine a fact at issue. Trial judges have great discretion in determining the qualifications of experts and the effect and weight to be given expert testimony. Misenheimer v. West Baton Rouge Parish Sheriff's Office, 95-2427, p. 2 (La.App. 1 Cir. 6/28/96), 677 So.2d 159, 160, writ denied, 96-1853 (10/25/96), 681 So.2d 371. Absent a clear abuse of this discretion, the trial court's rulings on the qualification of a witness as an expert will not be disturbed. State v. Berry, 95-1610, p. 20 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 456, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603.
*402 Mr. Foulks testified that he is the owner of Guarantee and has been in business for twenty-three years. According to Mr. Foulks, Guarantee specializes in restoring fire, wind, smoke, water and other damage for insurance companies. Mr. Foulks indicated that he has been to numerous schools where he has learned hands-on about the cleaning and restoration of a smoke damaged building. He is also a member of the Association of Specialists in Cleaning and Restoration. Furthermore, Mr. Foulks stated that he has previously qualified to testify as an expert in both federal court in New Orleans and state court in Baton Rouge.
Based on these qualifications, the trial court accepted Mr. Foulks as an expert in the field of fire reconstruction. The fact that Mr. Foulks is the owner of the plaintiff corporation does not preclude him from serving as an expert witness. The decision to qualify him as an expert is clearly within the trial court's great discretion and should not be disturbed. Nonetheless, as this matter was tried before the judge and not a jury, no prejudice resulted from Mr. Foulks being allowed to testify as an expert. Mr. Foulks' qualification as an expert in the field of fire reconstruction simply went to the weight to be afforded his testimony as opposed to the admissibility. For the foregoing reasons, we find this assignment of error to be meritless.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment of error, it is unclear from appellants' brief whether they are complaining that Scottsdale did not receive notice of the assignment or that the agreement was revoked by Ms. Anthony thereby terminating any assignment between the parties with regards to insurance proceeds. A review of the record reveals that Scottsdale had actually received notice of the assignment and that Ms. Anthony did in fact attempt to unilaterally revoke the assignment when she became dissatisfied with Guarantee's work. Nonetheless, we find that whatever the error complained of by appellants, this assignment of error is meritless.

Notice of Assignment
The law regarding assignment of rights is found in LSA-C.C. art. 2642 et seq. In accordance with article 2642, "[t]he assignee is subrogated to the rights of the assignor against the debtor." Article 2643 provides in pertinent part, "[t]he assignment of a right is effective against the debtor and third persons only from the time the debtor has actual knowledge, or has been given notice of the assignment."
A review of the record indicates that the adjuster who worked for Scottsdale, Ms. Chammie Moran, notified Scottsdale of the assignment prior to its payment of any insurance proceeds. The trial court obviously made a factual determination in this respect and as such, this determination is entitled to great deference.
Ms. Moran was working as an adjuster for Scottsdale at all pertinent times. Ms. Moran indicated that she was not aware of the contract between Ms. Anthony and Guarantee until there was a problem on the job site during construction and a contract was presented. Ms. Moran further testified that it was not until this time that she learned that Ms. Anthony had assigned her right to insurance proceeds to Guarantee. She then relayed this information to Scottsdale prior to the time Scottsdale made any payments pursuant to the insurance policy. It should also be noted that there is language in the contract whereby Ms. Anthony not only assigned her right to insurance proceeds to Guarantee, but also agreed to instruct her insurer to make payment accordingly.[1]
The Answer and Reconventional Demand filed on behalf of Ms. Anthony and Scottsdale do not contain any allegations or affirmative defenses to indicate that Scottsdale was not provided with notice of the assignment. Ms. Moran was the only representative of Scottsdale to testify at the trial of this matter, and as indicated, she notified Scottsdale of the assignment. The trial court's factual findings regarding notice of the assignment must be afforded great deference. After a review of the record in its entirety, we conclude that *403 a reasonable basis exists for these factual findings and the trial court was not manifestly erroneous in finding that Scottsdale had received notice of the assignment.

Revocation of Assignment
Relative to Ms. Anthony's attempt to unilaterally revoke the assignment, this involves a question of law. Appellate review of questions of law is simply whether the trial court's interpretive decision is legally correct. Zanders v. Golden Age Home Care Center, 97-0218, p. 3 (La.App. 1 Cir. 12/29/97), 705 So.2d 296, 297.
While the articles concerning assignment are very specific in that an assignment is not effective as against the debtor and third persons until notice has been given, the articles do not specifically address the issue of revocation of an assignment. Thus, we review general contract law for rules regarding revocation of an assignment. LSA-C.C. art. 2438.
The law concerning the general effects of contracts is found in LSA-C.C. art. 1983 et seq. Article 1983 provides as follows:
Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith. (Emphasis added.)
Additionally, as stated in Riley v. Gauche, 8 Orl.App. 65, 67 (La. App.1910), "[t]he rights of the parties are fixed by the notice of assignment given by the assignee to the debtor, and the resulting status cannot be set aside subsequently, except by the consent of all parties in interest."[2] Thus, it is clear that a contract, and by extension an assignment, may only be revoked by mutual consent of the parties. The record in the instant case does not contain any evidence to indicate there was any agreement between the parties to allow for revocation of the assignment.
According to the record, Guarantee would not have agreed to perform the renovation work for Ms. Anthony without receiving an assignment of the insurance proceeds. Mr. Liuzzo testified that he was under the impression that Guarantee would be named as a payee, along with Ms. Anthony, on any check from Scottsdale. He and Ms. Anthony entered into a contract whereby Ms. Anthony assigned "all such proceeds and rights to payment" by Scottsdale to Guarantee. By her own testimony, Ms. Anthony admitted that she had in fact signed the agreement with Mr. Liuzzo indicating that all checks would be made payable to both her and Guarantee.
As previously indicated, Guarantee was locked out of the job by Ms. Anthony on June 9, 1994, when, according to Mr. Liuzzo, 85%-90% of the work had been completed. At some point after this date, Ms. Anthony attempted to unilaterally revoke the assignment. However, the record is absolutely silent as to how she attempted to revoke the assignment. The insurance proceeds were ultimately paid to Mr. David Dillonkauffer, the contractor who completed the job.
Ms. Anthony indicated she paid Mr. Dillonkauffer the difference between the actual estimate and the insurance proceeds. She could not recall whether she signed the insurance check over to him or deposited the check into her account. According to Ms. Anthony, she did not pay Guarantee for the work it had performed. In fact, not only did Ms. Anthony contend that Guarantee was not owed anything for the work, she asserted that Guarantee owed her for damages to the premises.
Based on a review of the record, we conclude that the trial court was legally correct in holding Scottsdale and Ms. Anthony liable to Guarantee for the work performed on Ms. Anthony's building. In accordance with contract law regarding revocation, Ms. Anthony could not revoke the assignment without the consent of Guarantee. Furthermore, the record clearly indicates that Scottsdale was notified of the assignment by it's adjuster, Ms. Moran, thereby making the assignment effective as *404 against Scottsdale.[3] When there is a valid assignment in place, performance runs to the assignee, i.e. Guarantee. Both Ms. Anthony and Scottsdale are liable to Guarantee for the work that was performed. Ms. Anthony is liable because she contracted with Guarantee to have the work done. Scottsdale is liable because it received notice of the assignment and failed to pay the insurance proceeds to Guarantee as directed. Thus, as the assignment was valid and was not revoked by the mutual consent of the parties, any insurance check issued by Scottsdale for the repair work at issue should have been made payable to both Ms. Anthony and Guarantee in compliance with the parties' agreement which stated in part, "I/we further authorize and direct that Contractor be included as additional payee on all such insurance checks or drafts issued for damages affected by this loss...." Any dispute regarding satisfaction of the trial court judgment in favor of Guarantee should be resolved between Ms. Anthony and Scottsdale.[4]

ATTORNEY'S FEES
Answering the appeal of Ms. Anthony and Scottsdale, Guarantee contends that the trial court erred in failing to award attorney's fees in accordance with the contract between the parties. The contract at issue provides in pertinent part as follows:
I/we understand and agree that amounts equal to any deductibles or betterment not paid by the insurance funds are my/our responsibility, in addition to any reasonable collection costs, attorneys fees or service charges.
The trial court judgment rendered March 3, 1997, does not include an award of attorney fees for Guarantee, and we are not favored with written reasons for judgment. However, in a preliminary ruling following the trial of this matter, the trial court indicated that the claim for attorney's fees would be denied because of the ambiguity of the contract at issue. The trial court deemed the contract to be "insufficient to show full consent on that particular issue [regarding attorney's fees]." The court further noted that there was no price outlined in the contract. In conclusion, the court stated, "it's simply ambiguous, and you know the rule of ambiguity, counsel. Those who draft the document are held to its results, so, I do not deem attorney's fees to be awardable."
Whether a contract is ambiguous or not is a question of law. Osborne v. Ladner, 96-0863, p. 11 (La.App. 1 Cir. 2/14/97), 691 So.2d 1245, 1254. Thus, as previously stated, we look to the trial court's interpretive decision to determine if it is legally correct. Zanders, supra.
In interpreting contracts, we are guided by the general rules contained in LSA-C.C. arts.2045-2057. Article 2056 provides that any doubt or ambiguity in an agreement which cannot otherwise be resolved, must be interpreted against the party who prepared the contract. See Dohoney v. Louisiana Casino Cruises, Inc., 95-1570, p. 4 (La.App. 1 Cir. 2/23/96), 671 So.2d 537, 540, writ denied, 96-0729 (La.5/3/96), 672 So.2d 690.
In the instant case, the contract signed by the parties was prepared by Guarantee. The contract is titled "Work Authorization, Direct Payment Request, And Assignment Of Policy Proceeds." Apparently, it is a standard form used by Guarantee on all of its jobs. The clause in the contract regarding attorney's fees does not contemplate the situation before this court. The clause specifically refers to "deductibles or betterment (which is not defined in the contract) not paid by the insurance funds...." This case did not involve deductibles or betterment but a controversy over payment for services rendered and/or goods delivered. As such, the trial court was correct in finding that the contract was unclear *405 and in construing the ambiguity in the contract against Guarantee.

FRIVOLOUS APPEAL
Guarantee seeks damages for frivolous appeal under LSA-C.C.P. art. 2164. The courts have been very reluctant to grant damages under this article as it is penal in nature and must be strictly construed. Furthermore, because appeals are favored in our law, penalties for the filing of a frivolous appeal will not be imposed unless they are clearly due. Cavin v. Harris Chevrolet, Inc., 95-1878, p. 5 (La.App. 1 Cir. 5/10/96), 673 So.2d 654, 658. Damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates. Hessick v. Petro Publications, Inc., 96-0034, p. 7 (La.App. 1 Cir. 11/8/96), 684 So.2d 466, 472, writ denied, 97-0332 (La.3/21/97), 691 So.2d 89. Following an exhaustive review of the record in this matter, we cannot say that this appeal was taken only for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates. Therefore, damages for frivolous appeal are not warranted.

GUARANTEE'S MOTION TO STRIKE
By this motion, Guarantee contends that appellants attached two exhibits to their original appeal brief which were not introduced at the trial of this matter. Guarantee seeks to have these exhibits stricken from the record.
In accordance with Rule 2-12.13 of the Uniform Rules, this court can strike, in whole or in part, briefs which are not in compliance with the Uniform Rules. Furthermore, by this court's order dated August 24, 1995, "appellate briefs ... shall have attached thereto only `[a] copy of the judgment, order, or ruling complained of, and a copy of either the trial court's written reasons for judgment, transcribed oral reasons for judgment, or minute entry of the reasons, if given,' unless for good cause shown on written motion, permission for other attachments is granted by the court." The appellate briefs of parties are not a part of the record on appeal. This court has no authority to consider facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal. J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 8 (La.App. 1 Cir. 11/7/97), 705 So.2d 195, 201, writs denied, 97-3055, 97-3062 (2/13/98), 709 So.2d 753, 754. Therefore, pursuant to Rule 2-12.13 of the Uniform Rules and this court's order dated August 24, 1995, any exhibits attached to appellant's brief which were not introduced at the trial of this matter are hereby stricken from the record.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in all respects and Guarantee's Motion to Strike is granted. Costs of this appeal are assessed against defendants-appellants, Rebecca B. Anthony and Scottsdale Insurance Company.
AFFIRMED.
NOTES
[1] The contract provides in part, "thus I/we hereby assign to Contractor all such proceeds and rights to payment and instruct our insurer(s) to make payment accordingly."
[2] See also, 6A C.J.S. Assignment § 69, footnote 36 which states in part: "After notice to the debtor the assignment is irrevocable."
[3] As pointed out by Guarantee in brief, Scottsdale should not have relied on a unilateral revocation of the assignment and paid the proceeds directly to Ms. Anthony. Rather, Scottsdale could have investigated the matter to determine who was entitled to the proceeds or invoked a concursus proceeding in accordance with LSA-C.C.P. art. 4651 et seq.
[4] We note that neither Ms. Anthony nor Scottsdale filed a cross-claim against the other. The record reveals that both parties were represented at trial by the same attorney.