798 So.2d 1225 (2001)
Johnnie K. LEE
v.
ALTON OCHSNER MEDICAL FOUNDATION.
No. 01-CA-650.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2001.
Rehearing Denied November 21, 2001.
*1226 Robert R. Faucheux, Jr., LaPlace, LA, Counsel for Johnnie K. Lee, Plaintiff-Appellant.
Perry J. Staub, Jr., Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, L.L.C., New Orleans, LA.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
CHEHARDY, Judge.
In this workers' compensation suit, the presiding judge found that the employee violated the provisions of La. R.S. 23:1208 and, as a result, forfeited his right to workers' compensation benefits. For the following reasons, we affirm.

FACTS
On December 6, 1991, Johnnie K. Lee ("Lee") suffered a lumbar strain to his back while working in the course and scope of his employment as a nursing assistant for Alton Ochsner Medical Foundation ("Ochsner"). As a result of his injury, he underwent medical treatment, including lumbar microdiscectomy in 1992 and laminectomy and fusion in 1996. Since his injury, he has not returned to work except for a short period of time in the spring of 1992.
On December 21, 1998, Lee and Ochsner entered into a written "Compromise Agreement Acknowledging Mutual Receipt and Release." Ochsner paid Lee $50,000.00 and agreed to be the "payor of last resort" for "future reasonable and necessary orthopedic expenses incurred in the continuing care and treatment of the L5-S1 region of Mr. Lee's back or related thereto...." The agreement specifically excluded "the amount of any medical benefits payable from other sources...." Ochsner also agreed to pay "reasonable and necessary expenses incurred by Mr. Lee ... for medicines and prescription drugs, past and future required in connection with the treatment mentioned ... above, subject to the limitation described therein regarding pursuit of benefits payable from other sources."
Lee did obtain coverage under Medicare, Part A and B. At some point in the fall of 1999, a dispute arose regarding payment for Lee's prescriptions and medical visits. According to Lee, Ochsner's workers' compensation administrator refused to pay for services and expenses until the bills had been submitted to all other payors, including Medicare. On October 6,1999, Lee filed a "Disputed Claim for Compensation" alleging that Ochsner was not fulfilling their part of the agreement because their agent refused to authorize payment for medications prescribed by Lee's treating physician.
At that time, Lee's wife, Venus, was a regular, full-time employee of another hospital. One of her employee benefits was health insurance. Lee was covered as a dependent by his wife's health insurance coverage. Mrs. Lee's health insurance, however, excluded payment for treatment or medications that arose from Mr. Lee's workers' compensation claims. Mrs. Lee, however, had her husband's prescriptions for his work-related injury filled at her *1227 employer's pharmacy. Because she received a substantial discount as an employee covered under her employer-hospital's health care plan, Mrs. Lee paid approximately $2.00 for each prescription of her husband's medications at her employer's pharmacy.
Consequently, after reviewing Mrs. Lee's prescription purchases, her insurer contacted her to inform her that the prescriptions were not covered under her health plan because they arose from treatment for a work-related injury covered by Mr. Lee's workers' compensation claim. Mrs. Lee's insurer demanded reimbursement for full payment for the prescriptions.
On December 13, 1999, at a mediation conference held as a result of his disputed claim for compensation, Lee agreed to provide Ochsner with copies of all outstanding medical bills as well as copies of cancelled checks for medical expenses that were covered under the compromise agreement but that had been paid by Lee. Ochsner agreed to contact Lee's treating physician regarding pre-authorization of medical expenses by its workers' compensation administrator and to facilitate submission of medical bills to Medicare as primary payor. Ochsner agreed to reimburse Lee's out-of-pocket expenditures after receiving documentation that the expenses were not covered by another payor and copies of the appropriate receipts and cancelled checks. Finally, Lee agreed to provide documentation from his wife's employer that he was not covered under her health insurance through her employer.
A few days after the mediation conference, Mrs. Lee created an "Insurance Profile Print" in an attempt to replicate an actual printout she had received from the pharmacist at her employer's pharmacy. In her replication, she replaced the actual amount that she paid for Mr. Lee's prescriptions with an amount that she thought represented the actual cost of the medication. The fraudulent costs amounted to over $3000.00. Mrs. Lee then traced the pharmacist's signature from the original printout onto the forged printout. She also misappropriated several sheets of her employer's letterhead, wrote a letter stating that Mr. Lee was not covered as a dependent on her insurance, and forged the signature of a hospital employee. Finally, in hopes of obtaining money to reimburse her insurance company for the prescription costs, she faxed the forged letter, the forged pharmacy printout, and copies of two checks, which were falsified to indicate that the checks had been negotiated for the inflated amount for the prescriptions, to Ochsner's workers' compensation administrator.
On December 19, 1999, Ochsner's workers' compensation administrator noticed a discrepancy in the pharmacy printout and requested that the original be mailed to them. On or about February 7, 2000, Mrs. Lee's forgeries came to light. She was immediately terminated by her employer. Further, her employer reported the forgeries to Mr. Lee's workers' compensation administrator, which confirmed its suspicions about the printout.
On June 19, 2000, Ochsner filed a Motion to Forfeit Benefits alleging that Lee submitted falsified receipts indicating Lee had paid full price for prescriptions and false documentation that Lee was not covered as a dependent by his wife's health insurance. On July 22, 2000, in her deposition in the matter, Mrs. Lee admitted that she had falsified cancelled checks to show that she paid full price at her employer's pharmacy for Mr. Lee's medication in an attempt to obtain "reimbursement" for the full purchase price of the prescriptions from Ochsner's workers' compensation administrator. In her deposition, *1228 she testified that her husband did not know that she had forged the letter, the printout, or the checks that she faxed to his workers' compensation administrator.

PROCEDURAL HISTORY
On October 6, 1999, Lee filed a Disputed Claim for Compensation against Ochsner with the Office of Workers' Compensation. On December 13, 1999, a mediation conference regarding the disputed claim was held. On December 22, 1999, Ochsner answered the disputed claim.
On June 19, 2000, Ochsner filed a Motion to Forfeit Benefits. On August 31, 2000, the trial judge granted Ochsner leave to file a Reconventional Demand. After several continuances, the matter was heard on September 29, 2000. Both parties submitted post-hearing briefs and exhibits by the date assigned by the trial judge.
On January 12, 2001, the trial judge rendered the following findings of fact:
Findings of fact
1) Claimant, Johnnie K. Lee, was not a credible witness.
2) Claimant's spouse, Mrs. Venus Lee, was not a credible witness.
3) Examination of bank records of the joint bank account of M/M Lee indicates that Johnnie K. Lee did write checks on that account.
4) Both Johnnie K. Lee and Venus Lee attended a mediation with Lee's counsel on December 13, 1999.
5) Johnnie K. Lee signed the mediation report.
6) Lee agreed to provide to his employer's TPA [third party administrator] the copies of canceled checks for medical and prescriptions paid out-of-pocket and a letter from wife's employer stating that he was not covered by her group health plan.
7) Lee was a covered dependent under his wife's health plan.
The judge concluded, as a matter of law, that Lee violated the terms of La. R.S. 23:1208 and ruled that, as a result of his fraud, he forfeited all workers' compensation benefits. The trial judge also ordered that the matter be referred to the Fraud Section of the Louisiana Office of Workers' Compensation Administration.
On January 22, 2001, Lee filed a timely Petition for Devolutive Appeal, which the trial judge granted that same day. On June 28, 2001, Ochsner filed a timely answer to appeal.
In his brief, Lee alleges that the trial court erred in ruling that he violated the provisions of La. R.S. 23:1208 and finding that he forfeited his workers' compensation benefits as a result of that violation. Ochsner responds that the evidence fully supports the trial court's ruling. In its answer, Ochsner asks this Court to award damages for a frivolous appeal, including all appeal costs and attorney's fees and all trial costs.

ANALYSIS
La. R.S. 23:1208 provides, in pertinent part, that:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
In discussing the above cited statute, the Louisiana Supreme Court has *1229 noted that it is broadly worded, and does not require that an employee be put on notice of the consequences of making false statements. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7, 9. The only requirements for forfeiture under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber, 660 So.2d at 12. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Resweber, 660 So.2d at 16.
In a worker's compensation case, as in other cases, we are bound by the manifest error rule and may not set aside the factual findings of the hearing officer absent a finding that they are clearly wrong or manifestly erroneous. Rivera v. West Jefferson Medical Center, 96-152, 96-153 (La.App. 5 Cir. 7/30/96), 678 So.2d 602. Reasonable evaluations of credibility and reasonable inferences of fact by the trial court will not be disturbed, even though our appellate review may lead us to another reasonable evaluation. LeBlanc v. Grand Isle Shipyard, Inc., 95-2452 (La. App. 1 Cir. 6/28/96), 676 So.2d 1157, 1161.
In this case, Lee claims, as he did at the trial court level, that he had no knowledge of his wife's fraudulent activities. The record reflects that Mrs. Lee actively made false statements in order to collect benefits that were not due to her husband. Further, the trial judge heard from Mr. Lee and found that Mr. Lee was not a credible witness, indicating that he had full knowledge of the fraud. We agree.
Lee intentionally deceived Ochsner's workers' compensation administrator, and willfully made a false statement of additional out-of-pocket expenses, seeking a distribution of benefits which would have resulted in a substantial overpayment. In Lee's attempt to rob Peter to pay Paul, his false statements, made knowingly, defrauded the workers' compensation system. Under these circumstances, we cannot say the trial court made either an error of law, or an error of fact in ruling that Lee's actions resulted in a forfeiture of benefits.
In answering Lee's appeal, Ochsner contends that this appeal is frivolous. The imposition of damages for a frivolous appeal is regulated by La. C.C.P. art 2164. The courts have been very reluctant to grant damages under this article as it is penal in nature and must be strictly construed. Guarantee Systems Const. & Restoration, Inc. v. Anthony, 97-1877 (La. App. 1 Cir. 9/25/98), 728 So.2d 398, 405, writ denied, 98-2701 (La.12/18/98), 734 So.2d 636. Although a successful appeal is by definition non-frivolous, the converse is not true because appeals are favored. See Hellpenstell v. Bonnabel Hospital, 523 So.2d 887, 891 (La.App. 4 Cir.), writ denied, 531 So.2d 282 (La.1988)(citing Sherman v. B & G Crane Service, 455 So.2d 1275, 1278 (La.App. 4 Cir.1984)).
In order to assess damages for a frivolous appeal, it must appear that the appeal was taken solely for delay or that appealing counsel does not sincerely believe in the view of law he advocates. Guarantee Systems Const., 728 So.2d at 405.
Even though Lee's arguments did not persuade this Court, we conclude the arguments made by claimant were not presented in bad faith solely for purposes of harassment or delay. We cannot say that counsel did not sincerely believe in the position he advocates. Therefore, damages *1230 for frivolous appeal are not warranted.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.