834 So.2d 624 (2002)
Dustin PEPPER
v.
Thomas Seth TRIPLET and Allstate Insurance Co.
No. 2002 CA 0022.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Rehearing Denied February 3, 2003.
*626 Keith M. Whipple, Houma, Counsel for Plaintiff/Appellee Dustin Pepper.
Christopher P. Lawler, Christopher E. Lawler, Metairie, Counsel for Defendant/Appellant Allstate Insurance Co.
Before: KUHN, DOWNING and GAIDRY, JJ.
GAIDRY, J.
This is an appeal involving an award of damages to plaintiff, Dustin Pepper, for injuries resulting from a dog bite. Applying comparative fault principles, the trial court allocated twenty-five percent of the fault to the plaintiff and seventy-five percent of the fault to the defendant, Thomas Triplet. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Dustin Pepper, and defendant, Thomas Triplet, were next-door neighbors for many years. Approximately thirteen years prior to the dog bite at issue in this suit, Mr. Triplet purchased a dog, Bandit. Mr. Triplet's backyard, where Bandit resided, was entirely fenced in. Along both sides of Mr. Triplet's backyard, there was a four-foot high hurricane fence, which was topped by two feet of barbed wire on the side shared with the Peppers. The yard was bordered along the back by a six-foot wooden fence. The only entrances into the Triplets' backyard were through the Triplets' home and a six-foot wooden gate. There is no latch on the outside of the gate, and Mr. Triplet had placed a metal bar across the gate on the inside to prevent the gate from being opened and to prevent the dog from escaping.
In the many years that the parties were neighbors, Mr. Pepper had never been into the Triplets' house or backyard. Occasionally, over the years, children playing in the Peppers' yard would accidentally throw a ball over the fence into the Triplets' backyard. On these occasions, both parties testified that the custom was for the child to knock on the Triplets' door, and either Mr. or Mrs. Triplet would go into the backyard to retrieve the ball. Mr. Pepper's only contact with Bandit prior to the bite involved petting the dog's nose through the hurricane fence separating the yards.
*627 On November 11, 2000, Mr. Pepper was watching a football game with a friend and drinking beer. Mr. Pepper's son, who had been playing ball in the backyard, came in and told him that his ball had gone into Mr. Triplet's yard. Mr. Pepper instructed his daughter to go knock on the Triplets' door and request the ball, but she returned shortly and announced that the Triplets were not home. At this point, Mr. Pepper went into the Triplets' yard himself to retrieve his son's ball.[1] Upon entering the yard, Mr. Pepper was approached by Bandit, who followed him as he walked towards the ball. When Mr. Pepper reached for the ball, Bandit bit him on the hand. Mr. Pepper pulled back his hand, and Bandit bit him on the stomach. Mr. Pepper then proceeded to the hospital, where he received treatment for his injuries.
Following a trial on the merits, the court rendered a judgment against the defendant and for the plaintiff in the amount of $37,623.92, to be reduced by twenty-five percent for the plaintiff's comparative negligence. The court found that Mr. Triplet could have prevented Mr. Pepper's injuries in several ways: by putting a "Beware of Dog" sign on the fence, by securing the gate by some means more reliable that the metal bar, or by tying the dog up inside the yard. The court also found no evidence that Mr. Pepper provoked the dog. However, the court did find Mr. Pepper to be partially at fault in causing his injuries and allocated twenty-five percent of the fault to him.
Defendant appeals this judgment of the trial court, making the following assignments of error:
1. The trial court committed manifest error in finding Mr. Triplet seventy-five percent at fault when Mr. Pepper provoked the dog and when there was nothing Mr. Triplet could have done to prevent the bite from occurring.
2. The trial court committed an error of law in finding that Mr. Pepper was not trespassing.
3. The trial court committed manifest error in finding that Mr. Triplet knew or should have known that his dog possessed dangerous propensities.
The plaintiff answered the appeal, and assigned as error the trial court's finding of comparative fault on the part of the plaintiff. The plaintiff also asserted that the defendant's appeal is frivolous.

DISCUSSION
The liability of an animal owner is governed by La. C.C. art. 2321:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries *628 to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. (Emphasis added).
Article 2321 was amended in the tort reform legislation of 1996, La. Acts 1996, 1st Ex.Sess., No. 1, § 1, to legislatively overrule jurisprudence interpreting the prior version of article 2321 as imposing strict liability on animal owners for damages caused by their animals. See Holland v. Buckley, 305 So.2d 113 (La. 1974). The new article 2321 eliminates strict liability for animal owners, and replaces it with a negligence standard. However, the legislature chose to retain strict liability for dog owners. As a result of this revision, there is no longer any reason for the court, in determining liability, to consider whether the dog owner knew or should have known that the dog's behavior would cause damage or whether the dog owner failed to exercise such reasonable care as would have prevented the damage. The effect of the 1996 revision is a three-part test for assessing the liability of a dog owner. A dog owner is liable if: (1) the dog actually caused the damage to the plaintiff's person or property, (2) the owner could have prevented the damage, and (3) the dog was not provoked by the person suffering the damage. La. C.C. art. 2321.

ASSIGNMENT OF ERROR NO. 1
In this case, it is undisputed that Bandit actually caused damage to Mr. Pepper's person. Therefore, the only remaining questions relating to Mr. Triplet's liability are whether Mr. Triplet could have prevented the damage and whether Mr. Pepper provoked Bandit.
Mr. Triplet contends on appeal that because he had his yard fenced-in and his gate secured by a metal bar, and because he had never given Mr. Pepper the impression that he was welcome in his yard, there was nothing further he could have done to prevent the damage to Mr. Pepper, and therefore he is not liable under La. C.C. art. 2321. In Allen v. State Farm Fire and Casualty Company, 36,377 (La. App. 2 Cir. 9/18/02), 828 So.2d 190, the court considered whether an owner who erected a fence to keep his dog contained in his yard could have prevented damage to a neighbor who was bitten through the fence while trying to repair a loose board. The court found that the act of erecting a fence does not discharge the dog owner's duty:
The amended art. 2321 recognizes the obvious and great risk that a dog might bite someone. The article therefore imposes on the owner a duty to prevent dog bites and other damage. The fence failed to do this. The [owners] could have chained the dog or kept it indoors.
Allen, 36,377 at p. 7, 828 So.2d at 194-195.
Likewise, in this case, the trial court found that Mr. Triplet could have prevented Mr. Pepper's damages by putting a "Beware of Dog" sign on the fence, by securing the gate by some means more reliable that the metal bar, or by chaining up the dog. The court also found that Mr. Pepper did not have knowledge of Bandit's dangerous propensities and implied that Mr. Triplet should have advised him of such. After reviewing the record, we find no manifest error in the trial court's finding that Mr. Pepper's damages could have been prevented by Mr. Triplet.
As for Mr. Triplet's assertion that he is not liable because Mr. Pepper provoked Bandit by entering his "turf," the trial court found no evidence of provocation.
*629 Mr. Pepper testified at trial that Bandit was waiting nearby when he opened the gate. When he entered the yard, he petted Bandit, and Bandit followed him as he walked across the yard to get the ball. According to Mr. Pepper, it was not until he reached for the football that Bandit attacked him. The defendant testified at trial that Bandit was territorial, and argues on appeal that the plaintiff's entrance into the yard of a dog known by him to be territorial amounted to provocation. However, the defendant presented no evidence proving the plaintiff actually provoked Bandit. Based upon the absence of this evidence, we find no manifest error in the trial court's conclusion that Mr. Pepper's actions did not amount to provocation. Further, the trial court properly concluded that Mr. Triplet was liable based on the provisions of La. C.C. art. 2321.
Although the trial court held that Mr. Triplet was liable because he could have prevented the damage to Mr. Pepper and Bandit was not provoked, the court allocated twenty-five percent of the fault for the injuries to Mr. Pepper.[2] Both parties appeal the allocation of fault. The defendant argues that he could not be seventy-five percent at fault in causing the plaintiff's damages because he could not have prevented the damage and the plaintiff provoked Bandit. The plaintiff argues that his injuries were caused by the defendant's failure to take measures calculated to prevent the damage and that Mr. Pepper was not at all responsible for causing his own injuries.
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Thus, the extent to which each party contributed to the damages should be the measure by which the loss is apportioned. Howard v. Allstate Ins. Co., 520 So.2d 715, 719 (La.1988). In this case, the trial court found that an allocation of twenty-five percent of the fault to Mr. Pepper was appropriate because Mr. Pepper was partially at fault in causing his injuries:
[T]he court feels that you always take a risk when you enter somebody's yard. I realize that the ball was his child's ball. It was not his yard, and, of course, I think [Mr. Pepper] had to know that [Mr. Triplet] did not allow this dog out on the street.... The Court does not feel that the ... situation was so compelling that he could not have waited until the neighbors got home.... The Court feels that comparative negligence in the amount of 25 percent would be appropriate in this case.
Despite the fact that the court found that Mr. Pepper took a risk entering Mr. Triplet's yard, the court found that Mr. Pepper had no knowledge that the dog had previously bitten a child. Mr. Triplet acknowledged that his dog bit a child approximately four weeks before Mr. Pepper was bitten. He also testified that he did not disclose to Mr. Pepper that his dog had bitten the child, although he did see Mr. Pepper from time to time. Mr. Pepper testified that he had no knowledge of the prior bite until after he had been bitten by Bandit. Linda Pepper, Dustin's mother, testified as well that she did not recall learning of the prior dog bite until after her son was bitten. Despite the fact that the child who had been bitten by Bandit had been playing with Mr. Pepper's *630 children at the Peppers' home when the bite occurred, the court found that Mr. Pepper had no knowledge of the prior bite.
While the trial court found Mr. Pepper's actions to be negligent, that negligence did not rise to such a level that Mr. Triplet could not have prevented the damage or to amount to provocation. Nevertheless, Mr. Pepper's imprudent actions in entering his neighbor's yard with his neighbor's dog did contribute to his damages, and therefore his recovery should be reduced by his comparative fault. It is well settled that the allocation of fault is a factual matter within the sound discretion of the trier of fact and will not be disturbed on appeal in the absence of manifest error. Birdsall v. Regional Electric & Construction, Inc., 97-0712, p. 4 (La.App. 1 Cir. 4/8/98), 710 So.2d 1164, 1168. We find no manifest error in the trial court's allocation of fault.

ASSIGNMENT OF ERROR NO. 2
The defendant next asserts that the trial court committed legal error in finding that Mr. Pepper was not trespassing, specifically challenging the following portion of the trial court's reasons:
In closing arguments, the Defense Counsel basically made the argument... that Mr. Triplet, this is his home. He's got the right to privacy, I guess the king of the castle argument, so to speak. The Court disagrees with that argument for the following reasons: This is not a case where there's a trespass where somebody has entered property and either fell in a hole, tripped on a piece of furniture, in other words, something in the backyard that was there that was a part of the [Defendant's] property. Because we have those situations where we have uninvited guests trespassing and people get injured on somebody's property, and those rules, they are their own set of rules.
The court went on to say that there is a separate set of rules for dog bites, i.e., strict liability, which requires a different analysis. The court did not make a ruling on the plaintiff's status as a trespasser; it merely stated that the appropriate rules to apply in this case are those pertaining to the duty of a dog owner, rather than the duty of a landowner. In Vidrine v. White, 352 So.2d 776 (La.App. 3 Cir.1977), the court found that a child's status as trespasser, licensee, or invitee is not determinative of the duty owed him by the owner of the dog who bit him.[3] Likewise, Mr. Pepper's status as a trespasser or non-trespasser is not determinative of Mr. Triplet's liability. A consideration of the propriety of Mr. Pepper's presence on the property is unnecessary to a finding of liability; however, we may consider it for purposes of comparative fault. The trial court considered Mr. Pepper's imprudent decision to enter his neighbor's property and allocated twenty-five percent of the fault for his injuries to Mr. Pepper based upon this factor. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
The defendant's final assignment of error is that the trial court erred in finding that Mr. Triplet knew or should have known of Bandit's dangerous propensities. Under La. C.C. art. 2321, as amended, Mr. Triplet's knowledge of the dog's dangerous propensities is irrelevant. A dog owner is strictly liable for damage caused by the dog, which he could have prevented, as long as the dog was not provoked. La. C.C. art. 2321. There is no requirement of knowledge or presumed *631 knowledge of the dog's dangerous propensities in order for the owner to be liable. The imposition of such a requirement would essentially result in the dog-bite victim being unable to recover for his damages if he has the added misfortune of being a dog's first victim. While a dog owner may not have known of his dog's dangerous propensities, the legislature has placed the risk that a dog will bite upon the dog owner rather than the victim. A dog owner is strictly liable even in cases where neither the plaintiff nor the defendant is negligent.
Despite the irrelevance of Mr. Triplet's knowledge of Bandit's dangerous propensities to the outcome of the case, we find no merit in Mr. Triplet's argument that he was not aware or had no reason to be aware of Bandit's propensity to bite. Mr. Triplet testified that Bandit showed signs of being territorial. Mr. Triplet would chain Bandit up inside the yard when guests entered the yard. Furthermore, Mr. Triplet testified at trial that approximately one month before Mr. Pepper's unfortunate altercation with Bandit, Bandit bit a child who had climbed over his fence while visiting the Peppers. Since Mr. Triplet's testimony reflects that he was aware that Bandit posed a risk to persons who entered his yard and that he knew of at least one instance where a mere child had scaled his fence, we do not find manifest error in the trial court's conclusion that Mr. Pepper knew or should have known of his dog's dangerous propensities.

FRIVOLOUS APPEAL
Mr. Pepper requests that sanctions be levied against defendant for filing a frivolous appeal. The imposition of damages for a frivolous appeal is regulated by La. C.C.P. art. 2164. The courts have been very reluctant to grant damages under this article, as it is penal in nature and must be strictly construed. Guarantee Sys. Const. & Restoration, Inc. v. Anthony, 97-1877 (La.App. 1 Cir. 9/25/98), 728 So.2d 398, writ denied, 98-2701 (La.12/18/98), 734 So.2d 636. In order to assess damages for a frivolous appeal, it must appear that the appeal was taken solely for the purpose of delay or that counsel does not sincerely believe in the view of law he advocates. Guarantee, 728 So.2d at 405. We cannot say that this appeal was taken for purposes of delay or that appellate counsel does not believe in the position he advocates. Therefore, damages for frivolous appeal are not warranted.

CONCLUSION
For the above and foregoing reasons, the July 27, 2001 judgment of the trial court is affirmed. All costs associated with this appeal are assessed to the defendant.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.
DOWNING, J., dissents and assigns reasons.
I dissent as to the allocation of fault but affirm the quantum award. It has been the law of the English speaking peoples for so long that it is quoted without citation that a man's home is his castle.
An arrest must be by corporal seising or touching the defendant's body; after which the bailiff may justify breaking open the house in which he is, to take him: otherwise he has no such power; but must watch his opportunity to arrest him. For every man's house is looked upon by the law to be his castle of defence and asylum, wherein he should suffer no violence. Which principle is carried so far in the civil law, that for *632 the most part not so much as a common citation or summons, much less an arrest, can be executed upon a man within his own walls.
WILLIAM BLACKSTONE, COMMENTARIES, 3:288, 4:286-290 (1768).
This provision speaks for itself. Its plain object is to secure the perfect enjoyment of that great right of the common law, that a man's house shall be his own castle, privileged against all civil and military intrusion.
JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION 3 § 1893 (1833).
Also see St. Julien v. South Central Bell Telephone Co., 433 So.2d 847 (La.App. 3 Cir.1983), McKellar v. Mason, 159 So.2d 700 (La.App. 4 Cir.1964), Carmouche v. Bouis, 6 La.Ann. 95, 1851 WL 4242 (1851).
This concept extends to his backyard:
The curtilage of a home, that "area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life," is considered part of the home itself and is therefore afforded Fourth Amendment protection.
State v. Brisban, XXXX-XXXX, p. 5 (La.2/26/02), 809 So.2d 923, 928.
A neighbor has no right to enter another's fenced backyard unless the neighbor has given consent, either express or tacit. In this case no express consent was ever given and the facts show that there was no relationship from which tacit consent could be inferred. A fence without a dog indicates a desire to maintain privacy free from intrusion. A dog inside a fence emphasizes this desire. In today's lawless society, people maintain dogs and fences expressly to protect their homes from rear access.
Here, however, because there is no evidence of hostility between these two neighbors and there is evidence that plaintiff did not believe the dog would be hostile, I can comprehend that plaintiff felt his trespass was excusable and the law should not treat every intrusion by a neighbor as an actionable trespass. It may be reasonably foreseeable that a neighbor may intrude into a fenced backyard to retrieve a ball and the owner of the dog could possibly have prevented the accident by the putting an inexpensive sign on his fence but to find the dog owner 75% at fault is clearly wrong.
In my opinion, the highest amount of fault attributable to the defendant is 25%. I do not find that the quantum determined by the trial court is clearly wrong and I affirm the quantum award.
NOTES
[1] Exactly how Mr. Pepper got into the Triplets' yard was disputed at trial. Mr. Pepper testified at trial that he reached through the hurricane fence separating the two yards and removed the metal bar holding the gate closed and then entered the yard through the gate. However, Mr. Triplet testified that after the incident occurred, Mr. Pepper's mother informed him that Mr. Pepper had used a ladder to climb over the fence separating the two yards. Regardless of how Mr. Pepper gained access into the yard, it is undisputed that he did enter Mr. Triplet's yard.
[2] Although this case is governed by a Civil Code article establishing strict liability for dog owners, the principles of comparative fault are still applicable. La. C.C. art. 2323(B). See also Howard v. Allstate Ins. Co., 520 So.2d 715 (La.1988), applying the concept of comparative causation to cases arising under the strict liability provision of La. C.C. art. 2321.
[3] While Vidrine was decided under a different version of La. C.C. art. 2321 than at issue in the present case, both versions of the law provide strict liability for the owner of a dog.